## St. Louis, Iron Mountain & Southern Railway Company *v.* Shepherd.

### Opinion delivered June 1, 1914.

1. CARRIERS—FREIGHT—NOTICE OF INJURY—WAIVER.—A stipulation in a contract for shipment of live stock requiring notice of a claim for loss or injury within a specified time, is for the protection of the carrier and may be waived by it. (Page 252.)

2. CARRIERS—DAMAGE TO FREIGHT—NOTICE—WAIVER.—The mere knowledge on the part of a claim agent of a railway company that a shipper claims damages for injury to freight, unaccompanied by any act upon the part of the claim agent looking to an adjustment of the loss, is not sufficient to constitute a waiver of a stipulation requiring the claim to be made in writing within a prescribed time. (Page 252.)

Appeal from Boone Circuit Court; *Geo. W. Reed*, Judge; reversed.

#### STATEMENT BY THE COURT.

This is an action by C. W. Shepherd against the St. Louis, Iron Mountain & Southern Railway Company to recover damages alleged to have been sustained in a shipment of cattle from Bergman, Arkansas, to Kansas City, Missouri. The facts are as follows:

On the 9th day of November, 1912, C. W. Shepherd entered into a written contract with the railroad company for the shipment of the cattle, in which the railroad company is called "the first party" and Shepherd "the second party." The contract recites that the rate charged for the shipment of live stock under the contract is lower than the rate charged if the shipment is not made under the contract. The sixth clause of the contract is as follows:

"Sixth. That, as a condition precedent to the recovery of any damages for any loss or injury to live stock covered by this contract for any cause, including delays, the second party will give notice in writing of the claim therefor to some general officer or to the nearest station agent of the first party, or to the agent at destination or to some general officer of the delivering line, before such

stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served one day after the delivery of stock at destination, to the end that such claim may be fully and fairly investigated; and that a failure to fully comply with the provisions of this clause shall be a bar to the recovery of any and all such claims, and to any suit or action brought thereon.''

The cattle were shipped from Bergman about 8 o'clock on the morning of the 9th of November, 1912, and arrived at the stock yards in Kansas City, where they were to be unloaded, about 5 o'clock in the evening on the 10th inst. Other cattle in the same train were at once unloaded in the stock yard so they might be fed and watered. The cattle in question, according to the testimony of the plaintiff, were not unloaded until about 8 o'clock of the morning of the 11th inst. The plaintiff stated that the employees at the stock yard refused to unload them until that time for the reason that they claimed that the waybill had not been delivered by the railroad company and that they could not unload the cattle until they received the waybill. The plaintiff further testified: I went to see a claim agent of the railroad company and related to him the circumstances and condition of the cattle and asked him to investigate. I told him that I intended to claim damages. He told me to put my claim in writing and told me that these accidents could not be helped; said for me to let it go and take it up with the company's offices at home. I never gave any agent of the company any written notice of my intention to claim damages. I did inform the claim agent that the cattle were in the pen at the stock yard, and I wanted him to go down and look at them.

The plaintiff also testified as to the loss in weight of the cattle in consequence of the delay in unloading them, and as to the amount of loss sustained by him in consequence thereof.

A witness for the defendant testified that he was engaged in unloading and counting stock that came into

the Kansas City stock yard; that he knew about the particular car of stock in controversy; that the car was received in the Kansas City stock yards at 5:25 o'clock in the afternoon, and that they were unloaded in about twenty minutes thereafter; that there was no waybill accompanying them; that the rule of the stock yard about feeding and watering the night on which the cattle are received is that if the shipper wants them watered and fed the stock yard company does this for him; that if he waters them himself, the stock yard company feeds them.

The jury returned a verdict for the plaintiff, and the defendant has appealed.

*E. B. Kinsworthy, McCaleb & Reeder* and *T. D. Crawford,* for appellant.

1. Notice of intention to claim damages is a prerequisite to recovery. It is a condition precedent to recovery of damages for loss or injury that notice be given to some general officer or station agent. 63 Ark. 331; 67 *Id.* 407; 82 *Id.* 353.

2. In the absence of a statute parties may stipulate for a period of limitation shorter than that fixed by statute. 25 Cyc. 1017; 101 Ark. 310; Acts 1907, p. 557; Am. Cas. 1913, É. p. 868; 82 Ark. 839; *Ib.* 469; 83 *Id.* 502. The only exception is, the time must not be unreasonable. 227 U. S. 657; cases, *supra.* Kirby's Dig., § 5083, does not apply.

*C. W. Shepherd, pro se.*

1. Due notice was given to an agent of the company. The only object of the notice is to afford the company a fair opportunity to investigate the claim. 63 Ark. 331; 70 *Id.* 401. There was a substantial compliance with the provision as to notice. 75 S. W. 782; 94 *Id.* 735.

2. The suit was brought within six months.

Hart, J., (after stating the facts). In the case of *Cumbie* v. *St. Louis, I. M. & S. Ry. Co.,* 105 Ark. 406, the court held that a provision in a bill of lading of fruit that a written notice of intention to claim damages should be presented to the carrier within thirty-six hours after

notice to the consignee of arrival of the fruit at the place of delivery is not unreasonable, as it is the consignor's duty to have the consignee, or an agent, at the destination to ascertain the condition of the fruit. See also *St. Louis & S. F. Rd. Co.* v. *Pearce,* 82 Ark. 353. A stipulation in a contract for the shipment of live stock requiring notice of a claim for loss or injury within a specified time is for the protection of the carrier and may be waived by it. *Cumbie* v. *St. Louis, I. M. & S. Ry. Co., supra; St. Louis S. W. Ry. Co.* v. *Grayson,* 89 Ark. 154; *St. Louis, I. M. & S. Ry. Co.* v. *Jacobs,* 70 Ark. 401.

In the Cumbie case the court sustained a demurrer to the complaint. In that case the complaint alleged that the delivering carrier, through its agent, examined and knew of the condition of the peaches while in its possession after their arrival at their destination. The court held that where the facts stated show that the delivering carrier has actual knowledge of all the conditions that a written notice could give it, then the written notice is not required. It was, therefore, held that the court erred in sustaining a demurrer to the complaint.

In the Grayson case the claim was presented to a general officer of the railway company. He directed that the claim be presented to the chief clerk in the claim department, which was accordingly done, and negotiations looking to an adjustment of the damages were pending for some time thereafter. The court held that the railway company, by proceeding to investigate the claim, led the shipper to believe that the claim would be settled on its merits and that the jury, under such circumstances, was warranted in finding that the railway company waived the immediate notice stipulated in the contract.

In the Jacobs case, verbal notice was given to the proper agents of the railway company, upon which they acted, making all investigations they desired to make and without demanding any written notice. The court held that under these circumstances there was a waiver of the written notice.

In the present case, verbal notice was given by the shipper to a claim agent of the railway company at Kansas City, the place of destination. No notice of any kind was given to any general officer of the company at the place of destination, or to the station agent there. The claim agent was not such an agent to receive notice as was provided in the contract; and it is not shown that the claim agent had any authority to represent the railway company in the matter of receiving the notice contemplated by the contract. The claim agent, upon receiving the verbal notice, did not enter into negotiations with the shipper looking to an adjustment of his alleged loss. He did not accept the notice nor in any wise act upon it. He did not mislead the shipper in any way, but told him that he must give a written notice as required by the contract. Mere knowledge on the part of the claim agent of the railway company that the shipper claimed damages for injury to his cattle, unaccompanied by any act upon the part of the claim agent looking to an adjustment of the loss, is not sufficient to constitute a waiver of a stipulation requiring the claim to be made in writing within a prescribed time. There is nothing in the record tending to show any circumstances from which the jury might have inferred that the carrier waived the stipulation requiring written notice within the time specified in the contract. There is nothing in the record, as was in the Cumbie case, to show knowledge on the part of the company that the shipper had suffered loss. It was not shown that the claim agent was the proper person to receive the notice, and his knowledge could not be imputable to the railway company. The court therefore erred in not directing a verdict for the railway company. For this error the judgment must be reversed, and, inasmuch as the facts of the case seem to have been fully developed, the cause of action of the plaintiff will be here dismissed.