ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COM-
PANY v. TILBY.

Opinion delivered February 22, 1915.

1.  CARRIERS—SHIPMENT OF FRUIT—ICED CAR—NEGLIGENCE.—In an action against a carrier for damages to a shipment of peaches, evidence held sufficient to show the defendant liable for not furnishing plaintiff a car, properly iced, in accordance with its agreement.

2.  CARRIERS—SHIPMENT OF FRUIT—FAILURE TO FURNISH ICED CAR.—After notice a carrier agreed to furnish plaintiff a car properly iced, to be used for the shipment of peaches. Held, under the evidence, the carrier did not show a sufficient excuse for its failure to furnish the same, which would relieve it from liability for damages resulting from its failure to do so.

3.  CARRIERS—SHIPMENT OF FRUIT—NEGLIGENCE—DUTY OF SHIPPER—DAMAGES.—A carrier agreed to furnish plaintiff a car, properly iced, to be used by plaintiff in the shipment of peaches. The carrier furnished the car, but it was not properly iced. Held, there being no market for peaches at the place of shipment, it was necessary for plaintiff to do all in his power to mitigate the damages, and that it was not negligence on his part to ship the peaches in the car that was improperly iced.

4.  CARRIERS—SHIPMENT OF FRUIT—NEGLIGENCE—MEASURE OF DAMAGES.—A carrier failed to furnish a shipper with a car, properly iced, to transport peaches, from Camden, Ark., to Burlington, Iowa. By reason of the carrier's negligence the peaches were damaged when they reached Burlington, but there being no market for peaches there, they were, at the shipper's request, sent to Minneapolis. Held, in arriving at the amount of damages sustained by plaintiff shipper, plaintiff had a right to re-ship from Burlington, and the issue was whether the car would have reached the best available market if it had been properly iced at Camden, and whether the carrier, in failing to ice the car according to contract, deprived the plaintiff of that market, and the measure of damages is the difference between the market value of the fruit in the condition in which it would have been if it had been properly iced, and the market value in its damaged condition.

Appeal from Woodruff Circuit Court, Northern District; *J. M. Jackson,* Judge; affirmed.

*E. B. Kinsworthy, P. R. Andrews* and *T. D. Crawford,* for appellant.

1. Instruction No. 1, given at appellee's request, was too broad in making the carrier liable "for all damages which may accrue to the property shipped," even though such damages may be due to the inherent nature of the property. 6 Cyc. 381. It was also erroneous in imposing an absolute duty to ice the car. 41 Am. Rep. 696.

2. The only ground of negligence relied upon by appellee was the failure to furnish a car already iced. It was therefore error to refuse to instruct the jury as requested by appellant that their verdict should be for the defendant, in the event they found that the plaintiff, with full knowledge that said car was not properly iced, loaded his fruit into the car.

3. If the peaches were in such a heated condition as to cause them to ripen prematurely at the time they were loaded, the defendant would not be liable, and the court erred in refusing so to instruct the jury.

4. It was error to admit proof of diversion of the shipment, and to permit appellee to amend his complaint so as to show the diversion of the car and its final destination Appellant's *contract* with appellee contemplated Burlington as the destination. Testimony as to the diversion was prejudicial, since plaintiff's testimony shows that the market at Burlington was "too loaded" to justify him in stopping the car there.

5. The verdict is excessive. 73 Ark. 112; 88 Ark. 594; 101 Ark. 172; 54 Ark. 22; 74 Ark. 358; 44 Pac. (Kan.) 39.

*E. M. CarlLee,* for appellee.

1. Instruction 1, correctly states that the initial carrier is liable to the shipper for damages to an interstate shipment undertaken by it, whether the loss oc-

curred on its own line, or on the lines of connecting carriers. Act 270, Acts 1907; 89 Ark. 154; 91 Ark. 97.

There is no merit in the contention that the instruction is abstract as being without allegation or proof to sustain it. the uncontradicted proof shows that the fruit went into the car in first-class shipping condition, and arrived at its destination in an almost worthless condition.

The complaint in apt words charges inadequate refrigeration along appellants line and the line of connecting carriers. The language of the complaint will be given every fair and reasonable intendment. 91 Ark. 400, 121 S. W. 270; 96 Ark. 163, 131 S. W. 674.

2. The court properly refused to give instruction 8, stated in substance in appellant's argument No. 2, above. It ignores plaintiff's theory that it was necessary for him to load his peaches at the time he did, or wait until 12 o'clock the next day.

3. There was no testimony that the peaches were in a heated condition at the time they were loaded but on the contrary the proof shows that they were in a "sound, first-class shipping condition." Instruction 3 would have been abstract and misleading, and was correctly refused.

4. There was no error in admitting proof of diversion and permitting amendment of the complaint to conform to the proof. The proof was admitted without objection. Kirby's Dig., § 6145; 78 Ark. 346, 95 S. W. 778; 88 Ark. 181, 114 S. W. 221; 89 Ark. 300, 116 S. W. 676, 118 S. W. 1009.

5. The verdict is not excessive. There was no reshipment in this case, but the plaintiff preceded it and diverted it, of which diversion appellant had knowledge through its agent at Burlington. The entire shipment was, throughout, on a single bill of lading.

McCULLOCH, C. J. The plaintiff seeks in this case to recover from the defendant railway company damages sustained by reason of injury to a shipment of a carload of peaches from Camden, Arkansas, to Burlington, Iowa. Plaintiff owned a fruit farm a few miles out of Camden,

and in July, 1912, having a carload of peaches to ship, applied to defendant's agent for a car properly iced. That was on July the 17th or 18th, and the shipment was to be made on the 20th. The agent agreed to have the car ready for the peaches to be loaded into it on the morning of the 20th, and it was understood that plaintiff was to gather his peaches and have them ready for shipment on that date. He gathered his peaches on the 19th and hauled them to Camden and stored them in a hay barn ready to be loaded on the cars the next day; but when he got ready to load them on the morning of the 20th, he found that the car had not been iced according to the agreement made with him by the agent. He called upon the agent and a controversy arose between them concerning the failure to ice the car and as to whether he should load the peaches into the car without it being iced. There is a conflict in the testimony as to the substance of the conversation between the two—the plaintiff and the agent. The plaintiff testified that he loaded the peaches under protest and insisted that he should have an iced car, as it was very warm weather and he could not wait any longer for the car to be iced. The agent testified that he was about to have the car iced there at Camden and instructed the plaintiff not to put the peaches into the car until it could be iced. There is a further conflict in the testimony of the two men as to when the car was finally iced and the amount of ice put into the bunkers. The agent says it was iced about 1:30 o'clock on the 20th, and that the ice company reported to him that eight thousand pounds of ice was put in the bunkers, which was sufficient as the initial icing; but the plaintiff testified that the bunkers were not more than half full and that it was 3:30 or 4 o'clock in the afternoon before the ice was put in. The plaintiff went to Burlington ahead of the car and when he reached there he found that the market there for peaches was overstocked and in such condition as not to justify trying to sell them and he applied to the agent of the connecting carrier and had the shipment diverted through to St. Paul and

thence to Minneapolis. The car was found to be well iced when it reached Burlington, and also when it reached St. Paul and Minneapolis, but the peaches were so badly damaged when they reached Minneapolis that they had to be sold at a price that was scarcely sufficient to pay the freight bill. The undisputed evidence was that the peaches were in good condition when loaded into the car at Camden and that they were almost worthless for marketing purposes when they reached St. Paul. Peaches of that kind in good condition were worth sixty-five cents per basket at Minneapolis the day the shipment reached there, but plaintiff was compelled, on account of the damaged condition of the peaches to sell them at a greatly reduced price. The jury returned a verdict in his favor for damages in the sum of $655.65, which was the difference between what the peaches would have brought at the market price at Minneapolis if in condition and what the plaintiff got for them when sold there.

(1) It is contended that the evidence was not sufficient to sustain the verdict, but we think there was sufficient evidence to warrant a finding that the damage to the fruit was caused by defendant's failure to furnish a car properly iced. The undisputed evidence is that the peaches were in first-class condition for shipment at the time they were loaded in the car, and the jury were warranted in finding that if the car had been properly iced before the time for shipment, so as to enable the plaintiff to load the peaches into a cold car, they would have gone through to market without damage. The testimony is undisputed that two days before the shipment was to be made the plaintiff applied for a car to be furnished properly iced, and that the agent agreed to furnish the car and that this was not done. It was very hot weather in July, and when the car was delivered to the place where the peaches were to be loaded, and it was opened, plaintiff found that no ice had been put in it at all. It is true the agent testified that he was ready to have the car iced there at Camden, and that he tried to get the plaintiff to wait until it could be iced; but the

plaintiff, on the other hand, testified that there was nothing for him to do but to load the peaches into the car, which he did under protest, and that there was not sufficient ice put into the car to cool it. Out of this conflict the jury might have found that the failure to furnish the car already iced caused the damage and that the controversy between the plaintiff and the agent, as to whether the peaches should be put into the car first or delayed until after the ice was put into the bunkers, was unimportant.

Exceptions were saved to the following instruction, given at the instance of the plaintiff, which was a part of instruction No. 1, as follows: "Therefore, in this case, if you believe from the evidence that the defendant company accepted for transportation from the plaintiff at Camden, Arkansas, a carload of peaches for shipment to its destination, or diverted destination, and that the said fruit was damaged by the failure of the defendant company, or some succeeding or connecting carrier, to properly ice the car in which the peaches were transported, then you will find for the plaintiff." It is insisted, also, that in another sentence of the instruction there was an erroneous statement making the carrier liable for all damages, even though such damage might be due to the inherent nature of the property. If the language was erroneous, it was certainly not prejudicial in this case, for the undisputed evidence is, as before stated, that the peaches were in good condition for shipment when loaded in the car, and that there could have been no damage from the inherent nature of the property. It is contended that the instruction above quoted is erroneous because it placed an absolute obligation on the company to ice the car instead of merely holding it to reasonable care to furnish an iced car. This contention overlooks the undisputed fact that there was a contract on the part of the company to furnish an iced car on the date specified.

In the case of *Cumbie* v. *St. Louis, I. M. & S. Ry. Co.,* 105 Ark. 415, we held that "the difference between the

obligation to furnish cars imposed by law and that imposed by a contract to furnish them is that the contractual obligation is more onerous; for, while a railroad is not liable for nonperformance of its legal obligations where it has a reasonable excuse to furnish cars as such heavy and unprecedented traffic, it is not relieved from the obligation to perform its contracts by unexpected emergencies in its business."

(2)    There is really no testimony in this case which would have justified the jury in finding that there was any excuse for not furnishing the car properly iced according to the agreement.    The only excuse given by the agent was that the ice plant at Argenta was broken down at the time, but that is not sufficient to show that a car could not have been properly iced somewhere else.    He merely states that because of the fact that the ice plant at Argenta was broken down he sent to El Dorado and got a car where there were no facilities for icing it. The car reached Camden the evening before the shipment was to be made and, for aught to contrary shown in the testimony, it could have been properly iced at Camden in time to have it ready.    The law imposed upon the defendant the duty of furnishing a car properly iced and, in addition to that, there was a contractual obligation to furnish it at the time and place mentioned, and we think that there is no sufficient excuse shown even if that would relieve the company from responding in damages for its failure to do so.

(3)    Error of the court is assigned in striking out from one of defendant's instructions the following: "Your verdict should be for the defendant in the event that you find that the plaintiff, with full knowledge that said car was not properly iced, loaded said fruit in the car not properly iced."    There was no prejudice in striking out that statement from the instruction, for it was included in instruction No. 4 in almost the same language.    We do not mean to say that the instruction was correct and ought to have been given.    On the con-

trary, it was erroneous, for it ignored the duty of the defendant to furnish a car according to its agreement and defeated plaintiff's right to recover merely because he loaded the peaches into an un-iced car. The undisputed testimony is that there was no market at Camden, and that plaintiff was compelled to ship his fruit in order to find a market. It was incumbent on plaintiff, when he found that defendant had not complied with its contract, to do all that he could to mitigate his damages, and, notwithstanding the fact that the car was not properly iced, the jury had a right to find that he pursued the proper course in loading his peaches and in making all possible effort to get them to a market and dispose of them to the best advantage.

He stated in his testimony that he loaded the peaches under protest and it is fairly inferable that he realized that there was little, if any, prospect of getting the fruit to market in an un-iced car in condition to sell to advantage; still, it was his duty to make reasonable effort to mitigate the damages and, as before stated, the evidence warranted the conclusion that the proper thing for him to do was to continue his efforts to get the fruit to market. Besides, the sales in Minneapolis amounted to substantially enough to pay the freight, and defendant was not prejudiced by the ineffectual effort to get the fruit to market and dispose of it. If plaintiff had failed to make the effort he would be confronted with the contention, perhaps, that he had left undone something that he might have done to mitigate the damages.

Defendant also complains that the court refused to give an instruction submitting the question to the jury whether or not the peaches were in a heated condition such as to cause them to ripen prematurely, when they were loaded in the car, but the undisputed evidence is that the peaches were in good condition, and there was nothing to submit to the jury on that score.

The next contention is that the court erred in allowing the plaintiff to prove the diversion of the shipment from Burlington to St. Paul and Minneapolis. Now, the

testimony is that plaintiff's request for diversion of the
car was promptly granted and that the car was in a prop-
erly iced condition and went on through to St. Paul and
thence to Minneapolis without delay.  There is, there-
fore, no question involved in this case of the right to
divert the car, because the plaintiff's request for the di-
version was promptly acceded to.  He had the right,
clearly, to have the car forwarded from Burlington, even
though that was the destination named in the bill of
lading.  It is true the defendant was only bound to fur-
nish facilities to carry the shipment through to the point
of destination, but there are no circumstances in this
case which would make that question a material one, as
the same facilities would have been furnished for a ship-
ment to Minneapolis as to Burlington; that is to say, a
refrigerator car properly iced.  Plaintiff was entitled
to get his fruit to any available market, and since the
carrier acceded to his request for a diversion of the car
it is only important to consider that question in connec-
tion with the measure of damages.

(4)  As to that, it is contended that the verdict is
excessive for the reason that Burlington was the point
of destination and the condition of the market there
should be the sole test.  Counsel for defendant cite de-
cisions of this court which hold that the rule of damages
for delay in transporting goods is the difference between
the market price of the goods at the time and place when
and where they should have been delivered and their
value when they were delivered.  *St. Louis, I. M. & S.
Ry. Co.* v. *Coolidge,* 73 Ark. 112.  There was no objec-
tion to the instruction of the court to the effect that "the
measure of damages in this case will be the fair market
value of the peaches at destination, less the amount he
received for same."  But the question of the excessive-
ness of the verdict, and the sufficiency of the evidence
to sustain the amount awarded by the jury, raises the
question about taking into consideration the Minneapolis
market.  The undisputed testimony is that at the time
the peaches reached Burlington the market there was

overstocked, and that in order to find a satisfactory market it was necessary to divert the shipment or to forward the peaches to some other available market. Now, the breach of the contract and the negligence of the defendant which caused the injury occurred at Camden. There was no market for the peaches there, and the plaintiff was entitled to recover an amount which would compensate him for the difference between what he would have realized for the peaches at the point of destination if the car had been properly iced, less the market value in the damaged condition. Treating Burlington as the point of destination, it does not necessarily follow that the state of that market on the date the peaches reached there was the sole test, for if there was no satisfactory market there the plaintiff was entitled to carry his products to some other available market. *St. Louis S. W. Ry. Co.* v. *Kilberry,* 83 Ark. 87; *Kansas City So. Ry. Co.* v. *Mabry,* 112 Ark. 110. The mere fact that the Burlington market was in such condition that the fruit could not have been advantageously disposed of, even if it reached there in good condition, does not deprive the plaintiff of the privilege of taking the fruit to another market which would have been available to him if the car had been properly iced at Camden according to defendant's contract and its duty as a public carrier. It is unimportant whether there was a contract for the diversion of the car or not, for the reason that plaintiff had the right to reship his stuff from Burlington so as to reach a better market, and that privilege was in fact accorded to him without objection. So, after all, the real question in the case, so far as the amount of damages is concerned, is whether or not the car of fruit would have reached the best available market if it had been properly iced at Camden, and whether or not the failure of the carrier to ice the car according to the contract has deprived the plaintiff of that market. If it did, then he is entitled to the difference between the market value of the fruit in the condition in which it would have been in if it had been properly iced and the

market value in its damaged condition. There is some suggestion here that the fruit might have depreciated from the time it left Burlington until it reached Minneapolis, but we think that this was a question for the determination of the jury. The undisputed testimony is that the car was cold and had plenty of ice in the bunkers when it reached Burlington, and also when it reached St. Paul and Minneapolis, so the jury could have found, and doubtless did find, that there was no depreciation of the fruit after it left Burlington, and that plaintiff secured a better price for it when he sold it at Minneapolis than he could have done if he had stopped it at Burlington and attempted to dispose of it there.

So, upon the whole, we are of the opinion that the case was properly submitted to the jury, and that there was enough evidence to sustain the verdict.

Affirmed.

HART, J., dissents.