## CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. FOSTER.

### Opinion delivered May 10, 1915.

CARRIERS—LOSS OF FREIGHT—CLAIM—TIME.—A. purchased coal from B. in Memphis. By contract with C. in Kentucky, B. purchased the coal there, and it was consigned under one bill of lading issued in Kentucky, and reconsigned under the same bill of lading at Memphis to A. at Mesa, Ark. A. brought an action against defendant carrier for failure to make prompt delivery. *Held*, A. was bound by a clause in the bill of lading, requiring him to make any claim in writing for damages due to delay, within four months, after the delivery of the shipment.

Appeal from Prairie Circuit Court; *Eugene Lankford*, Judge; reversed.

#### STATEMENT BY THE COURT.

The appellee alleged that on August 23, 1913, he purchased of the Hunt-Berlin Coal Company at Memphis, Tennessee, a carload of coal; that the coal company delivered the car to appellant for shipment to Mesa, Arkansas; that at the time the car of coal was delivered to appellant, appellee, through his agent, the Hunt-Berlin Coal Company, notified appellant that the purpose for which the coal was to be used was for fuel to run an engine to generate power with which to pump water for the purpose

of irrigating appellee's rice crop; that appellee could not obtain fuel anywhere else and was depending upon the delivery of this car of coal for that purpose; that his rice crop was in need of irrigation and that unless the coal was promptly delivered, appellee's crop would be damaged or lost for want of water; that after said notice appellant accepted the carload of coal for shipment, and promised appellee that the car would go forward to the point of destination that night; that appellee relied on these assurances and made no further effort to purchase coal; that on August 25, the car had not been shipped, and appellee went to Memphis to take the matter up in person with appellant's agent, and was assured that the car would go forward by the next train; that the car did not leave Memphis until August 28, and did not reach Mesa until August 30. Appellee alleged that he was damaged in the sum of $3,000.

The appellant denied the contract of shipment as set up in appellee's complaint, and denied the allegations as to notice and special damages, etc. It set up that the coal was shipped under a contract called a uniform bill of lading, which was approved by the Interstate Commerce Commission by order No. 787, on June 27, 1908; that this contract provided, "that no carrier is bound to transport the property described in the bill of lading by any particular train, or in time for any particular market, or otherwise than with reasonable dispatch, unless by specific agreement endorsed thereon." That the contract further specified, "that the amount of any loss or damage for which the carrier is liable shall be computed on the basis of the value of the property, being the *bona fide* invoice at the place and time of shipment."

Appellant averred that by the terms of the contract under which the coal was shipped, it was not liable for the special damages claimed by the appellee; that the tariffs of appellant and of the initial carrier on file with the Interstate Commerce Commission and under which the shipment was made, did not authorize appellant nor the initial carrier to enter into a contract with the appellee to assume liability for special damages, nor for any damages

other than the damages covering the value of the coal; that any contract by which appellant undertook to assume liability to appellee for special damages would be a discrimination against other shippers of coal in favor of the appellee, and would violate the act to regulate commerce.

H. I. Pearce testified in substance: "I am traveling salesman for the Hunt-Berlin Coal Company, and was such in August, 1913. We sold J. B. Foster a carload of coal to be shipped to him at Mesa. We gave the Illinois Central Railroad an order to deliver the car of coal to the Rock Island to be shipped to Foster. I did not take up with the Rock Island the shipping of this car of coal to Foster that day, but did on the 23d day of August. On that day I called the Rock Island office and told the local agent that Foster would have to have the coal by Monday, or his rice crop would be ruined. The agent replied that upon receipt of the car, he would do his best to get it out Saturday night. I told the agent that Foster's rice had to have water on it, and if he didn't get the coal he could not put water on it and the crop would be ruined. The agent assured me that he would use his best efforts to get it out as soon as possible. That was on Saturday. Monday morning Foster and I went to the local office of the Rock Island Railway Company, and we had quite a lengthy conversation with the local agent in regard to the condition of Foster's crop. That agent at that time said that he had a car of coal, and would get it out without fail. I gave the Illinois Central billing instructions on this car of coal on August 20. That was three days before I spoke to defendant's agent about it. The car was then in the Illinois Central yards at Memphis. This coal is shipped from the mines and rebilled from Memphis, and then it takes a through rate as if it had been billed originally from the mines to destination. It takes the same rate as if it had been billed originally from the mines. Our billing instructions were given to the Illinois Central, and I took the matter up with the Rock Island agent afterward simply to expedite the movement."

The witness identified a bill of lading, which was in evidence, showing the shipment of I. C. Car No. 120115

from St. Charles, Ky., August 15, 1913, consigned to Hunt-Berlin Coal Company, Memphis, Tenn. The witness stated that this was the bill of lading upon which the car of coal sold to J. B. Foster was reconsigned to him from Memphis, Tenn. The car was ordered sent to J. B. Foster, Mesa, Arkansas. Witness did not procure another bill of lading from Memphis to Mesa, but merely directed that the carload of coal be sent on to destination at Mesa under the same bill of lading. The billing would merely be changed to show the destination Mesa, Ark., instead of Memphis, Tenn. The freight charges would be paid from the initial point to destination. At the time witness ordered the coal shipped from the mines to the Hunt-Berlin Coal Company witness did not know to whom it would be sold or delivered. The car was merely ordered along with other cars to keep a sufficient supply of coal on hand to meet the orders of the Hunt-Berlin Coal Company's customers. Witness stated, ''In determining the rate which Foster had to pay on the carload of coal, the regular flat rate from the mines to Memphis and the regular rate from Memphis to Mesa were added together; he paid the full sum of the two.''

There is no dispute as to the amount of the damages in the event appellee is entitled to recover. The record shows that the car was delivered to the appellant on August 23, 1913, at 11:59 p. m., with a grab-iron broken. It was returned to the appellant on August 27.

Appellee testified as to his damages and corroborated the testimony of the witness Pearce as to the notice that was given to the agent of appellant as to the special damages that would be incurred unless he received the coal promptly, and his testimony tends to prove that he went to Memphis to see about the coal on August 25; that if the car had arrived at Mesa August 26, the whole of his crop would have been saved. It damaged very fast after that date. His testimony tends to prove that it was eight or ten days after the appellee went to Memphis before the coal arrived at Mesa, and by the time it did arrive, the crop was burned to such an extent that appellee did not consider it wise or necessary to put the water on it. Ap-

pellee did not put in any claim against the appellant until his complaint was filed, which was March 2, 1914.

The testimony on behalf of the appellant tended to show that the rate on coal from Fox Run, Kentucky, to Memphis, Tennessee, on the Illinois Central was $1.10 per ton, and there was a proportional rate to destinations beyond Memphis of $1 per ton. There was no lower or higher rate for special contracts. The tariff provided that coal destined to Memphis could be reconsigned to points beyond in the same general direction at the balance of the through rate, that is, to points where there is a through rate. There was a through rate in effect at the time from Fox Run, Ky., to Mesa, Ark. The through rate was $2.25 per ton.

The tariffs of the Illinois Central and of the appellant, fixed by the Interstate Commerce Commission, were, by agreement, exhibited to the jury.

A witness who was a coal clerk of the Illinois Central in August, 1913, testified that he received orders from the Hunt-Berlin Coal Company on August 20 to reconsign a car of coal to J. B. Foster at Mesa, Ark., via the Rock Island on through rate. He reconsigned the car on August 20. The car was reconsigned by scratching out the name of the original shipper, towit, the St. Bernard Manufacturing Company, and inserting in red ink as the original shipper the Hunt-Berlin Coal Company, and by scratching out the Hunt-Berlin Coal Company, the original consignee, and inserting in lieu thereof J. B. Foster, Mesa, Ark., as the consignee.

Appellant's fourth prayer for instruction was as follows:

"You are instructed that if you find from the testimony in this case that the carload of coal in question was delivered to the Illinois Central Railroad Company at St. Charles, Kentucky, consigned to Hunt-Berlin Coal Company at Memphis, Tennessee, and that said shipment was under a written contract, attached to the deposition of H. I. Pearce herein, and that while said car of coal was in the custody of the said Illinois Central Railroad Company, said car was reconsigned by the said Hunt-Berlin

Coal Company to the plaintiff at Mesa, Arkansas, the plaintiff is bound by the terms of said contract, and if you further find that the plaintiff did not make a claim in writing, for the damages to his rice crop, to the railroad company, at the point of delivery or at the point of origin of said shipment, within four months after the delivery of said shipment, his action for damages is barred by the terms of said contract.

The jury returned a verdict in favor of appellee for $600. Judgment was entered in appellee's favor for that sum and this appeal followed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

The suit is barred by failure to give notice in accordance with the terms of the bill of lading. It was error to refuse the fourth instruction prayed by appellant. 227 U. S. 648; 101 Ark. 436.

*J. G. & C. B. Thweatt,* for appellee.

This was not a *through* shipment and the suit is not barred by failure of plaintiff to give notice in accordance with the terms of the bill of lading. 5 Enc. Law, p. 214, 215; 29 Tex. Civ. App. 295; 101 Va. 778.

Wood, J., (after stating the facts). The court erred in not granting appellant's prayer No. 4 for instruction. The undisputed testimony showed that the carload of coal in controversy was a through shipment from St. Charles, Ky., to Mesa, Ark. The Hunt-Berlin Coal Company, from whom the appellee bought the coal, directed the coal to be shipped from the mines in Kentucky over the Illinois Central Railroad. The bill of lading or contract under which the shipment was made provided that claim for loss, damage or delay should be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, and that unless claim was so made, the carrier should not be liable.

The testimony showed that under the contract between the initial carrier and the Hunt-Berlin Coal Company, the latter company could rebill the car when it arrived at Memphis to any of its customers, and that when

so rebilled or reconsigned it became a continuous or through shipment from the point of origin to the place of final destination.

The tariff rates on coal destined to Memphis over the Illinois Central provided that coal might be reconsigned to points beyond in the same general direction at the balance of the through rate. There was a through rate in effect at that time from Fox Run, Kentucky, to Mesa, Arkansas. When there is a reconsignment from Memphis the consignee at the place of final destination pays the through rate. The Hunt-Berlin Coal Company, in reconsigning the carload of coal, did not procure another bill of lading from Memphis to Mesa, but "merely directed that the carload of coal be sent from Memphis to destination under the same bill of lading."

In determining the rate which Foster had to pay on the carload of coal "the regular flat rate from the mines to Memphis and the regular rate from Memphis to Mesa were added together and he paid the full sum of the two. The freight was not made any cheaper by virtue of the reconsignment."

The above testimony was certainly sufficient to entitle appellant to have the jury instructed that the contract of affreightment between it and the appellee was that provided by the bill of lading issued by the Illinois Central Railway Company, the initial carrier. The appellant's prayer for instruction No. 4 was based upon the uncontroverted evidence. In refusing it the court ignored one of the material issues in the case which the testimony proved. The carload of coal having been shipped under the original bill of lading, issued by the Illinois Central Railway Company, the jury should have been told that as the appellee did not make a claim in writing for damages to his rice crop to the railway company at the point of delivery or at the point of origin of the shipment within four months after the delivery of said shipment, his action was barred. *Chicago, Rock Island & Pacific Ry. Co. v. Williams,* 101 Ark. 436.

For the error indicated the judgment is reversed and the cause dismissed.