St. Louis, Iron Mountain & Southern Railway Company *v.* Laser Grain Company.

Opinion delivered July 12, 1915.

1. Carriers—damage to freight—claim for damages—time of presentment.—A stipulation in a bill of lading, requiring the shipper to make a claim for damage to the shipment, within a certain time, is valid, and binding upon the parties.

2. Carriers—claim for damage to freight—time of presentment—burden of proof.—Failure to give notice in accordance with a provision of the contract of carriage, when specially pleaded and relied upon by the carrier, in an action against it for damages to freight, casts the burden upon the shipper to show either a compliance with it, or a waiver of the requirement by the carrier.

3. Carriers—time for making claim for damages to freight—waiver.—Compliance with a stipulation as to the time in which a shipper must make a claim to the carrier for damages to freight, may be waived by the carrier.

4. Damages—freight—perishable fruit.—In an action for damages to a shipment of peaches, an instruction is proper which declares that the amount of damage or loss for which the carrier is liable should be computed on the basis of the value of the property shipped, at the time and place of shipment, upon the *bona fide* invoice price to consignee.

5. Evidence—market value—opinion.—In an action for damages to a consignment of fruit, a witness may testify as to the market value of such fruit at a given time, without producing the market reports, and his testimony is not hearsay, because it is based upon such reports.

6. Carriers—damage to freight—measure of damages.—Where goods are damaged by a carrier, the rule for computing the damage is the difference between the market price of such goods at the time and place when and where they should have been delivered, and their value, when, where, and in the condition in which they were delivered.

7. Carriers—damage to freight—evidence of market value.—In an action for damages to a shipment of peaches, evidence of market value of same at the place of destination is admissible.

8. Carriers—shipment of fruit—negligence.—The issue of negligence of a carrier in failing to furnish cars suitable for the shipment of peaches, *held*, under the evidence, a question for the jury.

9. Carriers—shipment of freight—emergency.—A carrier is not required to prepare in advance for an unprecedented rush in its freight business, and until the emergency can be removed, will not be liable for delays.

10. Appeal and error—insufficient abstract.—The court, on appeal, will not go into the deficiencies of appellant's abstract, when appellee's counsel found it impracticable to point out the same.

Appeal from Johnson Circuit Court; *Hugh Basham,* Judge; modified and affirmed.

### STATEMENT BY THE COURT.

This suit was brought by the Laser Grain Company to recover damages alleged to have arisen from the negligence of the railway company in the shipment of twenty-seven car loads of peaches from designated points in this State to various points in other States.

Some of the peaches were loaded in cars used for shipment of meat, the railway company furnishing them for the use.

It was alleged that the peaches were damaged, occasioning the loss on account of unreasonable delay in transportation, failure to furnish proper cars and failure to properly ice the shipments in transit. Each of the twenty-seven counts of the complaint specified the damage of the shipment of a particular car, designating the different amounts claimed therefor.

The railway company answered, denying the allegations of the complaint, and pleaded specially two of the provisions of the contract of shipment, stipulating that the amount of any loss or damage for which it was liable "shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges if prepaid) at the place and time of shipment under this bill of lading," etc., and that claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin of the shipment, within four months after delivery of the property, etc., and, unless so made, the carriers shall not be liable."

The cases were tried before the court without a jury and judgment rendered upon each count of the complaint in appellee's favor, except No. 23.

It appears from the testimony that the peaches were loaded into the cars in good condition, some of them

were delayed in shipment and all arrived at destination more or less damaged, as a result of the unusual delay in transit and the failure to properly refrigerate. The testimony also tended to show the amount of such damage. Laser stated that the peaches in the different cars had been sold f. o. b. the point of shipment at a certain price per bushel or crate, except certain cars designated by him to be sold on commission, also the amount that was realized on the sale of the shipment at the point of destination, and the amount of the freight, icing and other charges claimed as damages.

There was other testimony relative to some of these amounts.

He was allowed to state, over appellant's objection, that he knew the market price of the peaches in Boston the destination to which three of the shipments were consigned on the date of the sale therefrom, having read the market quotations and price lists, although he had no such lists from which to testify.

The court refused to declare the law to be that the burden of proof was upon plaintiff to show that a written notice of claim for damages was given within four months to the agent of the defendant at the point of origin of shipment and also that such a provision requiring written notice of the claim for damages was valid and unless given would defeat a recovery.

The court also refused to find as a fact that the railroad had exercised all necessary diligence in supplying refrigerator cars for the shipment of peaches from the State in the year 1912; that on account of the unusual demand for such cars during the peach shipping season it was forced to substitute what it called "meat cars" as they were the only ones available, to supply the demand and that the damage to the peaches shipped therein were caused from the bunkers not being sufficiently large to hold enough ice to keep them properly refrigerated.

The court found in favor of plaintiff on twenty-six of the twenty-seven counts of the complaint for damages to that number of cars of peaches, designating the amount

on each count, and rendered judgment accordingly, from which this appeal is prosecuted.

*Thos. B. Pryor,* for appellant.

1. The finding of the court in each of the counts of the complaint is not supported by the evidence. It is clear from the evidence in this case that the rule recognized by this court, towit, that the measure of damages for delay in transporting goods is the difference between the market price of the goods at the time and place when and where they should have been delivered, and their value when they were delivered, was not followed by the lower court. 174 S. W. (Ark.) 1167, and cases cited. There was no competent evidence of the market value of the goods at the places of delivery. Laser's testimony as to the market value from his memory of the market reports was mere hearsay and inadmissible. The market reports themselves, if admissible at all, were the best evidence. 82 Ark. 358. His testimony was not admissible on the ground that he was an expert on market values of peaches at Boston and other points where they were sold, because no foundation was laid for such testimony by qualifying himself as an expert.

Moreover, these were interstate shipments, and come within the provisions of the uniform bill of lading adopted by the Interstate Commerce Commission by its order No. 787 of June 27, 1908, which provisions were pleaded in the answer of appellant as one of the grounds of defense against appellee's alleged claim for loss and damage. 21 I. C. C. Rep. 8; 147 Pac. 664; 73 Ark. 112.

2. The court erred in refusing to find the fact to be that the plaintiff had failed to comply with the provision of the bill of lading with reference to presenting its claim within four months. The uniform bill of lading adopted by the Interstate Commerce Commission provides that ''claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after the delivery of the property, or, in case of failure to make delivery, within

four months after reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable.'' All these being interstate shipments, the same are governed by the Interstate Commerce Act. 115 Ark. 20. The uniform bill of lading, *supra,* contains no provision that a carrier may waive a compliance with it, and the railway company could not, if it would, waive the plain provisions of the bill of lading above stated. *A. J. Phillips Company v. Grand Trunk Western Railway Company,* opinion U. S. Sup. Ct. March 15, 1915; 59 U. S. L. Ed. 444.

3. The court erred in refusing to declare the fact that there was an unusual and unprecedented demand for refrigerator cars in 1912. The uncontroverted evidence on this point establishes the fact that there was never before such a demand for refrigerator cars in which to ship peaches; that while in 1907, the next highest year, there were 472 cars shipped from Arkansas, there were shipped in 1912, 3,194 cars, and that in the years between these two the annual shipment did not reach 400 cars.

The law does not require a common carrier to foresee or anticipate an unprecedented and unusual demand for cars. 77 Ark. 362.

4. The judgment in each of the cases was excessive.

*A. W. Covington* and *Sellers & Sellers,* for appellee.

1. Since the appellant's abstract fails to state that it contains all of the testimony, the judgment should be affirmed for that reason, rather than that the court should assume the burden of exploring the transcript for information as to what the testimony was. 90 Ark. 335. Also, since the bill of exceptions fails to show by inference or otherwise, that it contains all the declarations of law given and refused by the court, appellant's objections to the giving or refusal of certain declarations named in his argument, can not be considered. 59 Ark. 179; 36 Ark. 495; 60 Ark. 258, 102 Ark. 96; 28 Ark. 549; 35 Ark. 224; 46 Ark. 209, 78 Ark. 378; 27 Ark. 592; 103 Ark. 430. And the same reason applies why appellant's

objections to the court's findings of facts should not be considered.

2. The four months' limitation of liability in the contract was purely a matter of defense to be pleaded by the appellant, and having pleaded it the burden rested upon the appellant to prove the failure of appellee to give the notice therein provided for. 46 Ark. 244; 31 Ark. 103; 12 Am. St. Rep. 393; 91 S. W. 38; 17 Mass. 188; 87 *Id.* 25; 31 N. W. 140; 71 N. C. 531.

3. Appellant's objections to certain testimony as incompetent can not be considered. Where a court tries a case without a jury, the presumption prevails that it based its findings upon competent testimony. 76 Ark. 255; 2 Enc. Pl. & Pr. 567; 90 N. W. 940; 88 Am. St. Rep. 849; 72 N. W. 1089, 3 Cyc. 362; 42 Ark. 314; 77 Ark. 261; 86 Ark. 316.

4. The so-called uniform bill of lading relied upon by appellant does not appear, so far as the record shows, ever to have been adopted by the Interstate Commerce Commission, and since it is in plain violation of section 20 of the Carmack amendment to the interstate commerce law, it is improbable that the Commerce Commission had anything to do with its adoption. See 210 Fed. 364. But, in any event, the provisions of the bill of lading may be waived. The requirement that the claim shall be presented within four months, is intended for the benefit of the carrier, and the latter can waive it. 72 Pac. 652; 63 Ark. 331; 39 N. E. 273; 111 Ark. 229; 113 Ark. 248.

5. If the court had made a finding that there was an unusual and unprecedented demand for cars in 1912, such a finding would have been immaterial. It was the duty of appellant to meet unusual demands; and it would have furnished no defense for the court to have found that there was an unprecedented demand, if it had not gone further and found that appellant could not have procured the cars and failed to furnish them because of the impossibility to procure them.

6. The court's finding and judgment upon the facts are as conclusive as the verdict of a jury. 55 Ark. 55; 80 Ark. 249; 107 Ark. 283; 90 Ark. 377; 68 Ark. 89; 111 Ark. 194; 112 Ark. 53.

7. There was no error in the court's charge on the measure of damages, other than in giving the declarations requested by appellant they were too favorable to appellant.

Under the Carmack amendment the initial carrier is made absolutely liable for any loss, damage or injury caused by it or any connecting carrier, and is expressly prohibited from making any contract limiting such liability; and all rights under existing laws are saved.

The attempt to fix by contract the method of computing the damages was ineffective, the same not being based upon a consideration. 73 Ark. 112; 74 Ark. 597; 100 Ark. 269; 57 L. Ed. 314.

It was competent for Laser, on cross-examination, to state the sources of his information as to prices. 115 Ark. 20.

Kirby, J., (after stating the facts). (1-2-3) Appellant's first contention is that the court erred in not finding in its favor because no claim in writing for damages was made to the carrier within four months after the delivery of the shipment, as required by the bills of lading. A stipulation of like kind in a bill of lading or contract of carriage has been held reasonable and valid and the failure of the shipper to present his claim in writing within the time specified, conclusive of his right to recover. See *Chicago, R. I. & P. Ry. Co.* v. *Williams,* 101 Ark. 436; *Chicago, R. I. & P. Ry. Co.* v. *Foster,* 118 Ark. 409. Failure to give notice in accordance with this provision of the contract of carriage, having been specially pleaded and relied upon as a defense, cast the burden of proof upon the shipper to show either a compliance with it or a waiver of the requirement by the carrier in order to a recovery. *St. Louis & S. F. Rd. Co.* v. *Keller,* 90 Ark. 313; *St. Louis & S. F. Rd. Co.* v. *Pearce,* 82 Ark. 357; *Cumbie* v. *St. Louis, I. M. & S. Ry. Co.,* 105 Ark.

406 and 415. Such a stipulation has been held to be one for the protection of the carrier, compliance with which can be waived by it. 6 Cyc. 509; *St. Louis S. W. Ry. Co.* v. *Grayson,* 89 Ark. 154; *St. Louis, I. M. & S. Ry. Co.* v. *Shepherd,* 113 Ark. 248, 168 S. W. 137.

It is true that no claim in writing was made to the carrier either at the point of origin or delivery of shipment within the time specified. But it is also true that a written claim for damages upon each of the shipments made, except three cars, was presented to the general freight agent of the railway company in St. Louis by appellee company, whose manager talked with the agent upon the adjustment and settlement of the claim for damages upon each of said cars, and also with the agent, Mr. Wyler, of the A. R. T. Company, to whom he was referred by appellant's agent relative thereto. This witness stated the claims for each of the said cars, except three, were made out in writing and mailed to Mr. Walton, the general freight claim agent of the railway company at St. Louis, and that the receipt of claims had been acknowledged by said agent upon postal cards, introduced in evidence by the witness, and he also stated that he had personally discussed with and negotiated for the settlement of each of the claims with said general freight claim agent in St. Louis, having all of them in writing with him and presenting them for the purpose of settlement; that neither of the agents at any time objected to the investigation or settlement of any of the claims because they were not presented in different form, or to the agent at the point of shipment or destination.

The freight claim agent of appellant company did not testify and Mr. Wyler, the agent of the A. R. T. Company, stated that the claims in writing for damages upon twenty-one of the cars shipped had been presented to him by the direction of appellant company for investigation and adjustment. Thus the claims were presented in writing to the general freight agent of appellant company and also by his direction to the agent of the A. R. T. Company for investigation, and negotiations between ap-

pellee and such agents looking to an adjustment, and settlement of these claims for damages were pending for some time thereafter without any objection made upon the part of appellant that such claims were defective or made out of time, and appellant company waived its right to insist upon compliance with the terms of the stipulation relating thereto upon all the cars for which such claims for damages were made within the four months allowed therefor.

(4) The court declared the law, as requested by appellant, that the amount of damage or loss for which it was liable should be computed on the basis of the value of the property shipped at the time and place of shipment, upon the *bona fide* invoice price to consignee, including the freight charges if prepaid, in accordance with the terms of the bill of lading. And the manager of appellee company stated that his estimate of damages was made upon the basis of the invoice price on the peaches shipped f. o. b. cars at the point of shipment, except the cars sold on consignment. He also testified relative thereto, and there was other testimony tending to show the various other items of expense claimed as damages.

(5) It is next contended that the court erred in permitting the manager of the appellee company to testify to the market price of peaches in Boston at the time the three cars in question should have been delivered there from his knowledge based upon market reports and quotations not produced in evidence. This witness stated that he kept informed of the market price of peaches in Boston during the time the shipment should have arrived, from the market quotations and reports published in the newspapers and otherwise, and that such value was as stated by him.

In *St. Louis & S. F. Ry. Co.* v. *Pearce*, 82 Ark. 358, the court said: "Standard price lists and market reports, shown to be in general circulation and relied on by the commercial world and by those engaged in the trade, are admissible as evidence of market values of articles of trade."

The witness here did not produce the papers and journals containing the published market quotations and reports, but he testified that he kept up with the market, that he examined and was familiar with the reports and knew the market value to be as stated, because of the information derived from such published reports. We do not think this testimony was incompetent as being hearsay, for the market value is indicated by the prices received and paid for articles of commerce, by those dealing therein and a witness who was present and saw the general public sales made at the prices offered and accepted, could testify thereto in establishing the market value of that article or commodity, at the time and place, without producing the bids and acceptances, or having published copies thereof, and we think it was competent for him to testify to the market value of the article in a particular market as he did, without producing the published reports and quotations in support of his statement. The fact that his statement was based upon such knowledge without producing the reports, price lists and quotations going rather to the credibility of the testimony, than to its competency.

(6-7) This testimony related only to damages claimed upon the cars shipped to Boston to be sold upon commission there, and, of course, it was competent to prove the damages upon all such shipments as had not been made upon orders and an agreed invoice price. The rule for computation of damages for delay and injury in transportation of goods is the difference between the market price of the goods at the time and place when and where they should have beeen delivered and their value when and in the condition in which they were delivered. *St. Louis, I. M. & S. Ry. Co.* v. *Tilby,* 117 Ark. 163, 174 S. W. 1167.

(8) It is next insisted that the court erred in not finding as a fact that the railway company was not able to furnish proper cars for the shipment of peaches on account of the unusual and unprecedented demand for refrigerator cars for the crop of 1912. There was testi-

mony tending to show that only 472 cars of peaches were shipped from the State in the year 1907, the largest shipment in any one year until 1912, during which year there were shipped 3,194 cars or an increase of almost 600 per cent.

Two witnesses testified that every possible effort was made by the A. R. T. Company, which owned 3,700 cars, to furnish and provide refrigerator cars for carrying the peach crop of 1912 to market. They used all the cars they had and all they could procure from other companies in furnishing the carriers of the State cars for transportation of the peaches. One of these witnesses stated that they began preparations early in 1912 for estimating the probable crop and supplying cars for the transportation of it and that it was impossible to have refrigerator cars manufactured in time to remove the crop of 1912 after its magnitude was indicated in the early spring.

One witness testified, however, that there was no such shortage of refrigerator cars as prevented the supply of the requisite number for carrying to market the peach crop of the State of Arkansas, and it was shown that the crops of Texas, requiring refrigerator cars for transportation had been moved before it had been necessary to begin the shipment of the Arkansas peaches, and that sufficient cars could have been had for the purpose upon reasonable and proper effort made to secure them.

(9) Appellant's requested declaration of the law was erroneous even if the testimony had warranted the finding of fact requested. Although a common carrier is bound to provide reasonable facilities of transportation to all shippers at every station, who in the regular and expected course of business offer their goods for transportation, it is not required to prepare in advance for an unprecedented and unexpected rush of business, and therefore will be excused for delay in shipping or even in receiving goods for shipment until such emergency can in the usual and regular course of business be removed. *St. Louis S. W. Ry. Co.* v. *Clay County Gin Co.,* 77 Ark. 362.

There is a mass of testimony in the record relating to the claims for damages upon twenty-seven different cars of peaches shipped 'and appellant claims to have made a fair and as full an abstract as practicable of the testimony relating to the claim of damages upon each car.

(10) Appellee claims generally that the abstract is not full and complete, but only challenges it specifically relative to count No. 9 of the complaint, saying in its brief: ''We take the testimony as to this car at random, it not being practical, as counsel says, to go into analysis of the testimony as applied to each car. * * * We not only call attention to the testimony relating to this particular car as a sample of the testimony with reference to other cars, but also to the manner in which the testimony has been abstracted by counsel for appellant.''

Necessarily the court can not be expected to explore the record to ascertain whether appellant's abstract of the testimony relating to the claim of damages for each car under each count of the complaint is fair and sufficient when appellee's counsel have not found it practicable to do so, and do not object to such abstract specially except as to count No. 9.

It will suffice to say that the testimony has been carefully read and considered. It is sufficient to support the court's findings as to the amount of damages for which judgment was rendered under counts Nos. 3, 4, 6, 7, 8, 9, 10, 12, 13 and 17, and on counts Nos. 1 for $371.45; 2, $363.01; 14, $270.98; 15, $346.34; 18, $190.17; 19, $225.45, and 26, $198.95.

The testimony is not sufficient to support a recovery under counts Nos. 5, 11, 16 and 22. There was no acknowledgment of receipt of a claim for damages upon the cars set out in counts Nos. 20, 21, 24, 25 and 27 within the time required, and the testimony does not definitely show that a claim for damages was made in any manner upon these cars and negotiations entered into for their settlement before the expiration of the four months stipulated in the bill of lading in which the claim was required to be made.

It is true the manager of appellee company or his father for him claimed to have talked with the railroad claim agents relative to the claims for damages on these cars, but the testimony does not show that such conversations occurred before the expiration of the time and the burden of proof to show waiver being upon appellee, was not sustained.

The judgment must therefore be modified, and after deducting the amounts from the trial court's findings under the different counts of the complaint, as indicated, and the amounts not allowed under the other counts, as stated, will be entered here for the sum of $4,281.87, with interest as allowed by the judgment of the court below, with the costs of appeal adjudged against appellee.

It is so ordered.