MISSOURI PACIFIC RAILROAD COMPANY *v.* HENDERSON.

Opinion delivered January 29, 1923.

1. EVIDENCE—MARKET PRICES.—Evidence of a live stock shipper as to a decline in the market price of cattle between the time they should have been delivered at destination by the carrier and the time they were delivered, based upon information from the consignee and from a regular market publication showing quotations from day to day on cattle, was sufficiently definite and competent as tending to establish the decline value of the cattle during the period of delayed shipment.

2. CARRIERS—WRITTEN NOTICE TO FURNISH CAR—WAIVER.—The rule that a railroad company when engaged in transporting live stock is bound to furnish suitable cars therefor on reasonable notice is controlled in interstate shipments by the character of notice approved by the Interstate Commerce Commission; and where it approved a rule requiring a written notice, an agent of a carrier could refuse to accept an oral order or notice to furnish a car for a shipper, but the requirements of written notice may be waived by the carrier's agent.

Appeal from Faulkner Circuit Court; *George W. Clark,* Judge; affirmed.

*Pryor & Miles,* for appellant.

*R. W. Robins,* for appellee.

HUMPHREYS, J. This suit was originally instituted by appellee in the Faulkner Circuit Court against the Missouri Pacific Railroad Company to recover $153 damages on account of the decline in prices of a carload of cattle in the St. Louis market occasioned by the alleged failure to furnish a car for the shipment thereof from Conway, Arkansas, on the sixteenth day of October, 1919, after notification. The shipment occurred during government control of railroads, and by agreement James C. Davis, as agent for the President, was substituted for the railroad company, and entered his appearance. Upon the trial of the cause before a jury, a verdict was returned and judgment rendered against appellant for $132 with interest at the rate of 6 per cent. per annum from June 16, 1920, until paid, from which an appeal has been duly prosecuted to this court.

Two contentions are made by appellant for a reversal of the judgment; first, that the proof was insufficient to justify the submission to the jury as to whether cattle declined in price at St. Louis between the time they should have been delivered in the National Stock Yards and the time they were delivered; and second, because the court erred in permitting appellee to recover upon a verbal contract for a car in which to ship the cattle.

(1). Appellee testified that the market price of the cattle he shipped was twenty-five cents less on the hundred pounds on the day the cattle arrived in the National Stock Yards, in East St. Louis, than on the day they should have arrived. The delay in shipment was eight days. He not only testified that he received this information from the man to whom he shipped the cattle, but that he obtained his knowledge from a regular St. Louis market publication, showing quotations from day to day of hogs, cattle, sheep, etc., which all the live stock men sent out regularly to shippers of live stock. Appellant was pressed closely on cross-examination concerning the character of the market publication, circular, or card, and he said it was published by the National Live Stock Company for use by all the live stock commission merchants and their patrons. We think the testimony sufficiently definite and competent as tending to establish the decline of the market value of the cattle during the period of delayed shipment. *St. Louis & S. F. R. Co.* v. *Pierce,* 82 Ark. 353; *St. L. I. M. & S. R. Co.* v. *Laser Grain Co.,* 120 Ark. 119.

(2) The appellant testified that on October 13, 1919, he called the agent at Conway, B. C. Benedict, and notified him to have a cattle-car ready on Saturday the 16th for shipment of a carload of cattle, belonging to him, from Conway, Arkansas, to the National Stock Yards at East St. Louis, Illinois; that the agent accepted the oral notice; that, pursuant to the notice, he drove his cattle a distance of twenty miles to Conway, where he

was compelled to wait for a week before he could get a cattle-car. As against appellee's right to recover, appellant cites a Missouri case, *Underwood* v. *Director General*, 222 S. W. 1037, in which it was held that "no verbal agreement for cattle-cars for shipment in interstate commerce can be relied on under the Carmack amendment, which requires a written contract, nor can a preliminary oral agreement for future interstate shipment." Appellee did not sue upon an oral agreement or contract of the government's agent to furnish him a cattle-car for an interstate shipment. He sued the carrier for not furnishing the car within a reasonable time after notice to do so.

"A railroad company, when engaged in the business of transporting live stock, is bound to furnish suitable cars therefor upon reasonable notice, whenever it is within its power to do so without jeopardizing its other business." (Syllabus) *Hines* v. *Mason*, 144 Ark. 11. Of course the above rule is controlled, in interstate shipments, by the character of notice approved by the Interstate Commerce Commission, and it approved a rule requiring a written notice. So, under the latter rule, the agent could have refused to accept an oral order or notice for a car. In the instant case, however, the agent accepted the oral notice or order, thereby waiving the form of notice. We know of no reason why the form of the notice or order might not be waived.

As the shipment occurred during government control, the judgment is reversed as to the Missouri Pacific Railroad Company, and affirmed as to James C. Davis, as agent for the President of the United States.