AMERICAN RAILWAY EXPRESS COMPANY v. BALD KNOB
FRUIT EXCHANGE.

Opinion delivered February 25, 1924.

1. CARRIERS—DUTY TO PROVIDE TRANSPORTATION FACILITIES.—A carrier is bound to make reasonable effort to provide instrumentalities for accommodating the business of the localities which it assumes to serve.

2. CARRIERS—FAILURE TO FURNISH ADEQUATE FACILITIES—EVIDENCE.—Evidence *held* to warrant a finding that an express company had not prepared itself to furnish adequate transportation facilities to its patrons.

3. CARRIERS—FAILURE TO FURNISH TRANSPORTATION FACILITIES—DAMAGES.—In an action for damages for failure to furnish express cars for shipment of strawberries, thereby necessitating their shipment by freight, evidence as to the decrease in value from such mode of shipment *held* to justify an award of damages.

4. CARRIERS—FORMAL DEMAND FOR CARS—WAIVER.—An express company, by furnishing forms upon which demands for cars are to be made, thereby waives the necessity for notice in the form prescribed by the rules of the Interstate Commerce Commission.

5. CARRIERS—WAIVER OF DEMAND FOR CARS.—Where an express company, through its local agent, gave notice that no more express cars would be furnished, this constituted a waiver of the necessity for a written demand for such cars as a prerequisite to liability for failure to supply them.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; affirmed.

*Mehaffy, Donham & Mehaffy,* for appellant.

1. There was no competent proof of damages and the measure thereof. In order to hold appellant liable, proof should have been made of what the berries would have brought if the express car had been furnished, and what they actually brought when shipped by freight. 77 Penn. Sup. Ct. 174; 109 S. E. 523; 184 N. W. 914; 92 Ark. 573. It was not competent proof of damages to show that there was a difference generally of $1 to $3 per crate in the price of berries shipped by express and those shipped by freight. The defendant, had the plaintiff been held to competent proof, could have met it by showing what the market prices were on the days that the

berries should have reached the market, and what they were on the days the berries did reach the market, and this difference was the true measure of damages. 121 Ark. 150; 92 Ark. 111; 142 Ark. 272; 132 Ark. 446; 134 Ark. 300; 139 Ark. 302; 149 Ark. 669; 144 Ark. 11; 81 Ark. 373; 61 Ark. 540.

2. The appellant furnished to the plaintiff all the express cars it was required to furnish under the law, and is therefore not liable in any sum. If the express company had furnished any more cars than it did, it would not only have violated the Federal statutes and the provisions of its tariffs, which have the force and effect of a statute, binding alike on the carrier and the shipper, but also have violated the State statute, prohibiting discrimination. If it equitably distributed the cars that it owned and controlled, that was all that was required. 230 U. S. 194, 197; 6 Cyc. 372; 77 Ark. 357; 144 Ark. 11: 4 R. C. L. 946, § 426; 217 U. S. 136, 54 L. ed. 698; 242 U. S. 120; 280 Fed. 780.

3. It was erroneous to instruct the jury that the express company was bound to know that, at certain seasons of the year, there would be movements of certain commodities, and that it must anticipate and provide cars to reasonably supply the demand. The effect of this instruction is to tell the jury that the company must supply the cars, whether it owned them or not or had them under control. In view of the announcement in its tariff that it had only a limited number of cars, and of the proof showing that the railroad companies own the great majority of such cars, it would be unreasonable and unfair to mulct the express company in damages for failure to furnish cars when it had furnished all that it possibly could furnish without discrimination against others. 166 Fed. 10; 242 U. S. 208; 18 L. R. A. (N. S.) 508; 20 L. R. A. (N. S.) 310, and note.

*G. G. McKay* and *Brundidge & Neelly,* for appellee.

Appellant overlooks, in argument, the fact that this is a suit based on the failure to furnish cars, and not for damages for delay or loss in transit. It is not

brought under the statute prescribing a penalty for failure to furnish cars, but under the common-law liability. As to the proper rule for damages in this case, see 91 Ark. 192. There can be no question as to the amount of damages. The undisputed testimony shows that berries loaded in express cars sell for more on any market, and, specifically, that appellees could sell all the express cars when loaded, on the track at Bald Knob, at from one to two dollars more per crate. The relation of carrier and shipper existed by virtue of the demand for the cars by the appellees, and the refusal of the company to supply them, and all the testimony shows that they intended to load these cars if received, and either sell them on the track, or at St. Paul, which was their principal market. 146 Ark. 355. It was the express company's duty, when it held itself out as a common carrier, to equip itself with sufficient cars to supply the normal demand, and failure to furnish necessary cars, legally demanded, would render the company liable, except in cases of extraordinary or unusual emergencies which could not be reasonably anticipated. The company cannot excuse itself by saying it has only two hundred and fifty cars. 64 Law. ed. (U. S.) 261; 2 Hutchinson on Carriers, 3d ed., 540; 10 C. J. 72; 105 Ark. 115; 10 C. J. 74; 4 R. C. L. 675; 77 Ark. 357.

McCulloch, C. J. Appellee is a domestic corporation, engaged in the business of buying and selling fruits, vegetables and other farm products, at the town of Bald Knob, in White County. We understand from the record that this corporation is a cooperative concern, organized for the purpose of handling produce for the growers. At any rate, it is shown that the corporation is engaged in shipping and selling fruits, berries and vegetables, and was engaged in that business during the years 1918, 1919 and 1920, as well as other years before and since.

This is an action instituted by appellee against appellant express company, to recover damages alleged to have been sustained by reason of failure of the express company to furnish refrigerator cars for the shipment of

strawberries during the season of May, 1920. It is alleged in the complaint that appellee notified the express company, several months in advance, that thirty refrigerator cars would be needed, and that during the season written notices, or demands, were given to appellant for eleven cars, and that further notices were not given, for the reason that the shippers were notified by the agent of the express company that no further cars would be furnished and that other notices would be unavailing. It is also alleged that appellant furnished only five refrigerator cars to appellee, and that appellee was compelled to ship the remainder of its berries in railroad refrigerator cars, at a loss of two dollars per crate on account of deterioration resulting from the slower and rougher method of transportation. The complaint also alleged facts constituting discrimination on the part of the express company in distributing its cars, but this charge was abandoned, and the cause was tried below solely on the alleged failure to furnish cars on demand.

Appellant answered, denying the allegation with respect to furnishing cars, and pleaded that it was impeded in the distribution of cars by a switchmen's strike on the railroad, and that it fairly distributed its refrigerator cars, and assigned to the shippers at the town of Bald Knob their proportion of such cars owned by the express company.

Appellee's damages were laid in the complaint in the sum of $2,999, and, on the trial of the cause, the jury returned a verdict in favor of appellee for the amount claimed.

Appellee introduced proof tending to show that strawberries had been raised for market in the vicinity of Bald Knob for about eleven years, and that there was an increasing demand for rapid transportation of the berries to market; that in January, 1920, the agent of the express company at Bald Knob was notified that appellee would need thirty refrigerator express cars, that, after the shipping season opened in May, appellee delivered to the agent of the express company at Bald Knob

written notices, on blanks furnished by the company, for eleven cars, and that the agent thereafter notified appellee not to make any further demands, as no other refrigerator cars could be furnished; that the express company only furnished five refrigerator cars to appellee, that the remainder of the berry crop, 42 cars, was shipped in freight refrigerator cars, and that there was a loss of from one to three dollars per crate, on account of having to ship the berries by that mode of transportation.

Appellee introduced numerous witnesses, who were engaged in the fruit and berry shipping business at various places in the country, and these witnesses testified that there was a necessary depreciation in the quality and market value of berries shipped by express and by freight, the extent of the damage varying, according to the testimony of the witnesses, from seventy-five cents to three dollars per crate. The testimony shows that the average refrigerator car carries 448 crates. According to this testimony, the award of damages to appellee was considerably less than the testimony warranted, if the difference in the market price had been placed even at the lowest amount fixed by these witnesses.

Appellant introduced as a witness its superintendent of transportation, who testified concerning the number of refrigerator cars owned by the express company, and also stated in detail the methods of the company in furnishing and distributing cars. The testimony of this witness, as abstracted by counsel, fully sets forth appellant's defense in this case as follows:

"The American Railway Express Company owns 250 refrigerator cars. On the lines mentioned, with our own cars there are about 1,000 in the country—993, I think, is the exact number. Of this number the express company owns 250. The other cars, the railroad cars, are used constantly by the railroads when they are needed for the shipment of perishable goods. You get peak movements where the cars are not sufficient in number, and they vary from season to season. One season will come at different times, and next year, while it might be

the same, the next one is a little earlier or a little later. I distribute the cars to the territory, and they are distributed to the shippers by the route agent having charge of the district.   Take this territory down here; we know this territory as the Little Rock district, by reason of the fact that the cars are usually distributed from Little Rock and then taken on the Missouri Pacific Railroad both ways out of Little Rock, also up toward Van Buren.   In peak shipments all the cars, both express company and railroad company cars, are brought into use.   That was true in 1920.   We gave the Little Rock territory as many cars as other territory, proportionately.   If we had given this territory any more cars than we did, we would have been discriminating against some other territory.''

It is shown by the testimony of this witness that the business of the express company covers practically all of the United States, a part of Canada, and the Hawaiian Islands.   The witness also testified that there was a contract between the express company and certain railroad companies for the latter to furnish refrigerator cars, but the witness was not certain as to the details of the contract, and the same was not introduced in evidence.

The first and principal contention of appellant is that the evidence is not sufficient to sustain the verdict, in that all of the cars owned by appellant were fairly and equitably distributed among shippers; that there is no charge of discrimination involved; that appellant was in readiness to furnish equipment for all usual and reasonable demands, and that it was not bound to anticipate unprecedented demands.   We do not think that counsel for appellant has drawn the proper inferences from the testimony in the case—the inferences that the jury might have drawn in viewing it in its strongest light favorable to appellee.   It is true that there is no charge of discrimination involved, but it is equally true that the evidence adduced by appellant does not show indisputably that the distribution of cars was interfered with by a switchmen's strike.   One of the witnesses testified that there was such interference, but it is shown that the rail-

road company furnished all refrigerator cars that were demanded or needed, after the express company had refused to furnish such cars.

The testimony shows that it is highly desirable to ship berries by express rather than by freight, and that there is a considerable difference in the deterioration in quality and price, on account of the fact that express shipments are more rapid, and that there is better refrigeration and smoother riding. The testimony shows, as before stated, that the difference in price varies from seventy-five cents per crate to three dollars per crate. The evidence also shows that in the berry-growing sections there is an increasing demand for more express cars, for the reason stated above, and that for several years past shippers have been demanding all of such cars that they could get, and only ship by freight when compelled to do so by lack of facilities for shipping by express. Now, the testimony adduced by the express company shows that it only owns 250 refrigerator cars, and that the railroad companies own 750 refrigerator cars, and the evidence fails to show that, notwithstanding the increasing demands for express cars, there have been any increased facilities for that mode of transportation. The company, of course, must take notice of the general conditions of the country where it does business, and it is bound to know of these increasing demands for refrigerator cars.

The undisputed evidence shows that, in the year 1918, there were 250 carloads of berries shipped from White County, Arkansas, and that the shippers demanded all the express cars they could get, and yet, in the face of this growing demand, the company, according to the testimony, has made no attempt to increase its facilities to meet the demand. The testimony does not present a case of an unprecedented demand, but the usual and growing demand from year to year. The law requires a carrier to make reasonable effort to provide instrumentalities for accommodating the business of the localities which it assumes to serve. This is not merely a statutory require-

ment, but it is an elementary principle originating in the common law.   2 Hutchinson on Carriers, 540; 10 C. J. 72.

The jury could have found, from the evidence in this case, notwithstanding the statement of appellant's principal witness that it had adopted all reasonable means to furnish cars, that appellant had not prepared itself to furnish adequate transportation facilities to its patrons.

It is further urged that the testimony fails to support the verdict in that there is no proof of actual damages, according to settled rules of law. Appellant invokes the application of the rule that, in an action against a carrier for failure to transport and deliver property, the measure of damages is the depreciation in value of the commodity at the point of destination.   *L. R. & Ft. Smith Ry. Co.* v. *Conatser,* 61 Ark. 560; *C. R. I. & P. Ry. Co.* v. *Miles,* 92 Ark. 573; *C. R. I. & P. Ry. Co.* v. *Stallings,* 132 Ark. 446; *Hines* v. *Mason,* 144 Ark. 11.   The answer to that contention is that this is not a suit for delay in transportation, but it is one to recover on account of failure to furnish proper facilities for transportation, and for damages arising because of such failure.   In other words, it is a suit to recover damages resulting by reason of the difference in the modes of shipment, by freight or by express, and the proof abundantly establishes the fact that there is a necessary depreciation on account of the less desirable method of transportation by freight.   There is no other way reasonably of establishing the damages than by the proof introduced by appellee.   The berries had to be shipped by freight because of appellant's failure to furnish express cars. There was no unusual delay shown in the shipment by freight, otherwise there would have been a remedy against the railroad company.   But the proof adduced does establish the fact that there is a necessary delay in shipping by freight, instead of by express, and that the fruit is necessarily injured on account of the transportation being rougher.   Besides, the proof shows that it was the custom to sell berries to the highest bidders at the point of shipment, after being loaded on cars, and that

sales in that manner brought from $1 to $3 per crate more when the berries were loaded in express cars than when loaded in freight cars. This was sufficient to justify an award of damages on that basis.

It is also contended that appellee should not be permitted to recover, for the reason that the notices, or demands, for cars were not in writing. The proof shows that there were eleven cars demanded in writing. It is insisted that these written demands were not in the precise form required by the rules of the Interstate Commerce Commission, but it is shown that the notices were given on forms furnished by the company itself. The express company could waive the requirement, and did waive it, by accepting notices on blanks which it furnished to its patrons. *Mo. Pac. Rd. Co.* v. *Henderson,* 157 Ark. 43. Only five of the eleven cars actually demanded were furnished by the company. The testimony shows that other notices were not given, for the reason that the local agent, under instructions from the route agent, informed the shippers that no more express cars would be furnished. This constituted a waiver of the written notice. *Mo. Pac. Rd. Co.* v. *Henderson, supra.* After the refusal of the express company to furnish any more cars, it would have been a useless thing to give written notices or demands.

There are numerous assignments of error with respect to the court's charge to the jury, but it is unnecessary to discuss them in detail, for, on examination, we find that the instructions of the court were in accordance with the principles of law herein announced. The instructions also conformed to the principles of law announced in *DeQueen & Eastern R. Co.* v. *Park,* 146 Ark. 355, which are controlling in the present case, the facts being to some extent similar. The instructions properly presented to the jury the issues, and there was, as before stated, evidence sufficient to sustain the verdict.

The judgment is therefore affirmed.