**MELLON, Director General of Railroads, v. ERB et al.**

(Circuit Court of Appeals, Ninth Circuit. July 12, 1926.)

No. 4798.

Commerce ⬤⟜88—Interstate Commerce Commission cannot order reparation to shipper, compelled to pay domestic rate because of noncompliance with regulations for obtaining lower export rate, in absence of finding that regulations were unreasonable (Transportation Act 1920, § 206[c], 41 Stat. 461).

Under Transportation Act 1920, § 206 (c), the Interstate Commerce Commission could not award reparation to shipper of goods from eastern points to San Francisco and Seattle for export, who were required to pay the domestic rate rather than the lower export rate, because they had not complied with regulations promulgated by the carrier for obtaining the lower rate, there being no complaint of the rates, as such, and no finding that the regulations, the object of which was to prevent congestion at ports, were unreasonable, but the general necessity for and propriety of them being conceded, and the Commission being merely of the opinion that the application of the regulations to the particular shipments would work injustice, as they did not contribute to congestion any more than if there had been compliance with the regulations; the published tariffs, of which the regulations are part, being binding on the Commission, unless found to be unreasonable.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

Action by Arthur Erb and others against Andrew W. Mellon, Director General of Railroads, as Agent. Judgment for plaintiff, and defendant brings error. Reversed.

This is a writ of error to review a judgment in favor of the plaintiffs on certain awards made by the Interstate Commerce Commission under section 206 of the Transportation Act of 1920 (41 Stat. 461). See Anderson & Co. v. Director General, 61 Interst. Com. Com'n R. 64. The awards grew out of shipments of iron and steel from eastern points to San Francisco and Seattle, in 1918, for export. The basis on which the awards were made will sufficiently appear from the following extract from the report of the Commission:

"Defendants had in effect schedules of transcontinental export rates on iron and steel articles to Pacific Coast ports, those applicable to the articles here under consideration from the points of origin to San Francisco and Seattle ranging from 40 cents to 85 cents. It was provided, in substance, that export rates to San Francisco would apply only on freight originally consigned through, with rail, port, and ocean charges fully prepaid or guaranteed from point of origin to a specific destination beyond the port of exit; such destination being shown in the bill of lading issued at the time of shipment, and for which through export bill of lading was issued prior to the arrival of the freight at the port of exit. To Seattle it was provided, effective December 26, 1918, that the export rates would apply only on freight for which a through export bill of lading had been issued in exchange for the original shipping receipt or domestic bill of lading within 15 days from the date thereof. The terms of these rules were not complied with by complainants on account of negligence or ignorance of their employees, or by reason of delays attending the commercial features of the transactions, with the result that the carriers assessed domestic rates ranging from 65 cents to $1.25 on these shipments, plus certain terminal charges."

In other words, the export rate was less than the domestic rate on the same class of freight, but, in order to obtain the benefit of the lower or export rate, shippers were required to comply with certain rules and regulations promulgated by the carrier. This, in the present instance, they failed to do. The reason for making the award is thus stated by the Commission:

"Conceding generally the necessity for and the propriety of tariff rules such as these in order to relieve congestion at the ports, it would appear that their application to these shipments, which did not contribute to congestion at the ports any more than they would have done if handled in strict conformity with the rules, resulted in charges that under the attending circumstances were unreasonable in comparison with those contemporaneously applicable to other export shipments handled in substantially the same manner, but in connection with which the formalities prescribed by the rules were complied with. We find that the application of the tariff provisions to these shipments resulted in charges which were unreasonable to the extent that they exceeded those that would have accrued at the export rates, plus terminal charges which would apply to similar shipments under tariff provisions subsequently established; that complainants made the shipments as described and paid and bore the charges thereon; that they have been damaged to the extent of the difference between the charges paid and those that would have accrued under the findings here-

in; and that they are entitled to reparation, with interest."

A. A. McLaughlin of Des Moines, Iowa, Alex. M. Bull, of Washington, D. C., and James E. Lyons, of San Francisco, Cal., for plaintiff in error.

M. H. Peterson and H. M. Wade, both of San Francisco, Cal., for defendants in error.

Before GILBERT, HUNT, and RUDkin, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). An award of reparation is authorized whenever rates, fares, charges, classifications, regulations, or practices are found to be unjust, unreasonable, unjustly discriminatory, unduly or unreasonably prejudicial, or otherwise in violation of the Interstate Commerce Commission Act (section 206 [e], Transportation Act, supra), and, if the Commission has found that the rates in question were unjust, unreasonable, unjustly discriminatory, unduly or unreasonably prejudicial, or otherwise in violation of the Interstate Commerce Commission Act, and the finding is supported by competent testimony, the inquiry of the courts is at an end. If, on the other hand, no such finding was made, or if the finding is not supported by any competent testimony, or if the award of reparation was based on an erroneous view of the law, the judgment should be reversed.

There was no complaint before the Commission concerning the domestic rate, or the export rate, as such. The complaint was directed solely against the regulation providing that the export rate through San Francisco applied only to freight originally consigned through, with rail, port, and ocean charges fully prepaid or guaranteed from the point of origin to a specific destination beyond the port of exit, such destination being shown in the bill of lading issued at the time of shipment, and for which a through bill of lading was issued before the arrival of the freight at the port of exit, and, in the case of shipments through Seattle, that the export rate applied only to freight for which a through export bill of lading was issued in exchange for the original shipping receipt or domestic bill of lading within 15 days from the date thereof.

The object of the regulations in question was to prevent congestion of freight at ports during the war period, and there was no finding that such regulations were unreasonable. On the contrary, the general necessity for and propriety of the regulations was conceded; but the Commission was of

13 F.(2d)—48

opinion that the application of the published tariffs to these particular shipments was unreasonable, in view of the fact that they did not contribute to congestion at the port of exit, any more than they would have done if handled in strict conformity with the regulations. In other words, the Commission assumed jurisdiction to award reparation in the face of reasonable regulations, whenever in the opinion of the Commission the application of the regulations to a particular shipment would work an injustice. That this was the view of the Commission is made plain by the decision in Dill-Crossett v. Director General, 104 Interest Com. Com'n R. 48, where the decision in Anderson & Co. v. Director General, supra, was disapproved. The Commission there said:

"Since our decision in Anderson & Co. v. Director General, supra, the Supreme Court has said that a rule relating to the performance of a transportation service under published tariffs was part of the tariff and could not be waived. Davis v. Henderson, 266 U. S. 92 [45 S. Ct. 24, 69 L. Ed. 182]. We followed that decision in Campbell Construction Co. v. L. C. & S. F. Ry. Co., 95 Interst. Com. Com'n R. 603. There demurrage charges assessed on certain carload shipments of various commodities were found inapplicable because of lack of written notice to complainant of arrival of the cars, although oral notice was given and no objection was offered to this method of notification. In the instant case the complainant seeks to have the charges assessed under the domestic rate declared unreasonable to the extent that they exceeded those applicable under the export rate which would have applied if complainant had complied with all the provisions in the tariff. Complainant does not assail the reasonableness of the domestic rate and the record does not warrant that the rule relating to export shipments was unreasonable. The finding sought would be equivalent to a waiving of the tariff rule and contrary to the doctrine of Davis. v. Henderson, supra."

We think the latter decision was clearly right. While the case of Davis v. Henderson did not involve the power of the Interstate Commerce Commission, it was there held that the published tariff was binding on the shipper, the carrier, and the courts, and the published tariff is equally binding upon the Commission, unless found to be unreasonable. In view of the fact that there was no finding that the regulations were unreasonable, we deem it unnecessary to determine whether there was any testimony to support

such a finding, if made; but we are inclined to agree with the conclusion of the Commission in Dill-Crossett v. Director General, where it was held that such a finding was unwarranted.

For these reasons, we are of opinion that the award upon which the action was brought is invalid, and the judgment of the court below is therefore reversed.