**EMPIRE BOX CORPORATION OF STROUDSBURG v. DELAWARE, L. & W. R. CO.**

No. 63, Docket 21092.

United States Court of Appeals
Second Circuit.

Dec. 3, 1948.

Rowland L. Davis, Jr., of New York City, for appellant.

Benjamin Feldstein, of New York City, for appellee.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Chief Judge.

This is an appeal from a judgment for the plaintiff in an action to recover charges paid to the railroad for the "constructive placement" upon its tracks of loaded freight cars at the plaintiff's request. The facts are stated fully and accurately in the memorandum of the district court:

"Plaintiff's paper mill at Stroudsburg, Pennsylvania, had its own private side track, with a capacity of 5 or 6 cars. Cars consigned to plaintiff were to be delivered at the side track, according to the side track agreement. Freight Tariffs No. 4-X and No. 4-Y govern this case. Under Section C of Rule No. 4 actual delivery of cars 'upon other than public delivery tracks,' or written notice 'of readiness to so deliver'· constituted notification to the consignee. Under Rule 5, Section A, Paragraph 1, it is provided that where, as in this case, delivery of a car is to be made 'to other than a public delivery track' (such as a private side track) and the delivery cannot be made

390

because of the inability of the consignee to receive the car, it is the duty of the railroad to hold the car at destination or the nearest available hold point and to send written notice thereof to the consignee. The Rule states that 'This will be considered constructive placement.'

"For the period covered by this suit and between December 9, 1944, and September 30, 1946, demurrage charges accrued on a great number of cars which could not be delivered to the plaintiff because of the congested condition of the plaintiff's side track, and through no fault of the defendant. Pursuant to an oral arrangement between the plaintiff and defendant, no written notice was sent to the plaintiff of the constructive placement of cars consigned to plaintiff during that period. Instead, defendant's car clerk at Stroudsburg, Pennsylvania, would telephone every morning to the defendant's employee in charge of coordinating the receipt of materials and the shipment of products at plaintiff's mill, and notification of the number of cars that had arrived at Stroudsburg consigned to plaintiff would be given over the telephone, together with the initial and car numbers and the contents thereof. Later in the day plaintiff's employee would telephone defendant's car clerk and tell him which cars plaintiff wished to have placed that day on plaintiff's side track and the order in which plaintiff wanted them. These instructions were followed and the cars were delivered as plaintiff wished to receive them. Plaintiff's employee had a set of demurrage sheets and copies of the tariffs. He kept his own records of time of arrival based on the telephoned notice from the defendant's car clerk. Bills for demurrage were regularly presented and paid. Later plaintiff demanded a refund of the demurrage thus paid.

"If plaintiff is entitled to a refund it is agreed that the amount thereof would be $9,620.73. Defendant contends that plaintiff orally waived any written notice of constructive placement and that written notices were not sent pursuant to that agreement between plaintiff and defendant. Plaintiff denies that the written notices of constructive placement had been sent prior to De-

cember 1, 1944, and denies making any request of defendant that the written notices be discontinued. Plaintiff's counsel contends that any waiver of a written notice of constructive placement, would have to be in writing in order to be valid. I have concluded that plaintiff did orally waive written notice of the constructive placement of cars consigned to plaintiff, and that the practice followed by plaintiff and defendant of a telephoned notice of arrival and of telephoned instructions as to the time and order of delivery to plaintiff's siding was for plaintiff's accommodation, and was much more expeditious and satisfactory to plaintiff than the slower method of written notice of constructive placement."

Had the transactions been between the plaintiff and a party other than a common carrier, and had they not been subject to regulation under the Interstate Commerce Act [1] the plaintiff would have no standing. It had received the full benefit of the services for which it paid, and neither law nor equity would countenance a recovery that would result in the unjust enrichment which it is the chief purpose of the action for money had and received to prevent. Since, however, the charges were made and collected by a carrier under a published tariff, we cannot decide the case merely under the common law; and we think it is ruled by Davis v. Henderson.[2] In that case a shipper failed in an action brought against the railway for loss suffered because of its failure to furnish him with a car within a reasonable time after notice and demand. As appears from the report in the state court, the plaintiff notified the railway's agent on October 13, 1919, "to have a cattle car ready on Saturday the 16th." "The agent accepted the oral notice"; but the plaintiff was forced "to wait for a week before he could get a cattle car." The Interstate Commerce Commission had "approved a rule requiring a written notice," but the state court held that, although "the agent could have refused to accept an oral order or notice for a car," by accepting the oral notice or order, he "waived" the form of notice. The court knew "no reason why the form of the notice or order might not

[1] §§ 1–27, Title 49, U.S.C.A.

[2] 266 U.S. 92, 45 S.Ct. 24, 69 L.Ed. 182.

be waived."[3] Brandeis, J., in reversing this judgment said that "the transportation service to be performed was that of common carrier under published tariffs. The rule was a part of the tariff." He cited three earlier decisions of the court as authority. In the first of these[4] the shipper succeeded only because the court found that the prescribed written notice had in fact been given. In the second[5] a shipper was held not bound by acceptance from a connecting carrier of a second bill of lading, containing as a condition of suit that he should file a written notice of claim—that being an addition to what was required by law. In the third[6] a shipper failed to recover, who had made a contract with the carrier's agent to furnish cars on a day named: a contract not provided in the published tariffs. See also Louisville & Nashville Railroad Co. v. Chatters[7] and Mellon v. Erb.[8]

The Commission construed Davis v. Henderson, supra,[9] as covering a situation substantially the same as that at bar[10] and it appears to us that they were right, although Commissioner Eastman dissented, pointing out that the ruling afforded an easy cover for favoritism. That was undoubtedly true; and, moreover, the same objection scarcely applied to Davis v. Henderson, supra,[9] because it is hard to see how a carrier could use the necessity of a written demand for cars as a means of discrimination, unless we assume that disregard of the rule was of common occurrence, which is not likely. Nevertheless, we think that the undoubted opportunity for abuse is not a justification for disregarding the canon of rigid adherence to the letter, which the Supreme Court has adopted in general towards published tariffs and their attendant rules. Although the underlying purpose of this is to prevent just that kind of discrimination which the application of the canon in this instance will make possible, we are not disposed to make an exception. The regulations which govern the transactions of a great railroad—infinite in number and diversity as they are—demand speedy and certain application in practice, if the work is to go on as it should. Their incidence will often be harsh and unjust, and yet that may not be too high a price for smooth operation. The cost and delay in working out justice in the relatively few instances where their literal enforcement works injustice, may in the end involve more loss than gain. The law has often accepted similar compromises in recognition of its inability to decide every case on its merits; the Statute of Frauds and the Statute of Limitations at once come to one's mind. Therefore, although in the case at bar injustice to the carrier conspires with opportunity to defeat the purpose of the canon, we hesitate to deviate from it. Moreover, whatever doubts we might otherwise have, are laid by the ruling of the Commission itself.

Nor does it seem to us that the Commission gave ground in Bartlesville Zinc Co. v. Director General,[11] as the defendant argues. That was a rehearing of an earlier decision,[12] which had been made before the decision in Campbell Construction Co. v. La Crosse & Southeastern Ry. Co., supra,[13] and before Davis v. Henderson, supra.[14] We are not concerned with the validity of the distinction which the Commission drew between the rules in force in 1916 which governed the case being heard and those of 1919, which had governed Campbell Construction Co. v. La Crosse & Southeastern Ry. Co., supra;[15] arguendo we will assume that the difference did not justify an affirmance of the original order. Indeed it is significant that three of the eleven commis-

---

[3] Missouri Pacific Railroad Co. v. Henderson, 157 Ark. 43, 247 S.W. 1070, 1071.

[4] Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S. Ct. 541, 60 L.Ed. 948.

[5] Missouri, Kansas & Texas Ry. Co. v. Ward, 244 U.S. 383, 37 S.Ct. 617, 61 L.Ed. 1213.

[6] Davis v. Cornwell, 264 U.S. 560, 44 S.Ct. 410, 68 L.Ed. 848.

[7] 279 U.S. 320, 331, 49 S.Ct. 329, 73 L.Ed. 711

[8] 9 Cir., 13 F.2d 752.

[9] 266 U.S. 92, 45 S.Ct. 24, 69 L.Ed. 182.

[10] Campbell Construction Co. v. La Crosse & Southeastern Ry. Co., 95 I.C.C.Rep. 603.

[11] 136 I.C.C.Rep. 57.

[12] 74 I.C.C.Rep. 26.

[13] 95 I.C.C.Rep. 603.

[14] 266 U.S. 92, 45 S.Ct. 24, 69 L.Ed. 182.

[15] 95 I.C.C.Rep. 603.

sioners dissented. Nor are we concerned with the particular evidence which as an alternate ground the Commission took to be the equivalent of written notice. The important thing is that, rightly or wrongly, they intimated no doubt of the correctness of their original holding that Davis v. Henderson, supra,[16] ruled the situation at bar. Besides, the Commission has repeatedly acted upon the authority of the Campbell Construction Co. v. La Crosse & Southeastern Ry. Co., supra,[15] since it was decided.[17]

There is also a significant confirmation of this interpretation. Rule 4 § A requires a carrier to give the consignee notice of arrival of cars. Rule 5 § A requires it to give notice of placement to the consignee: that is, that a car cannot be delivered upon an "other-than-a-public-delivery track." The second is the rule here in question. In both the years 1916 and 1919 both notices had to be given in writing; but in both years the carrier might avoid written notice of arrival, if it and the consignee had "otherwise agreed." Not so as to notice of placement; in neither year was there any provision for waiver of that notice. Thus a carrier who argues that a privilege of waiver may be inferred as to Rule 5 § A, notwithstanding the express leave given in Rule 4 § A, and the absence of such leave in Rule 5 § A, has to overcome ab initio this difference in the language chosen. In itself this appears to us not an inconsiderable handicap. Be that as it may, if we assume that the carrier could overcome the handicap in 1916, how can it do so after 1919? In that year Rule 4 § A was tightened by requiring the "waiver" to be in writing; and no oral evidence would put any burden on the consignee of responding to an oral notice. It is to the last degree unlikely that Rules of 1919 intended that the "waiver" of notice of "placement"—at best only implied—might be by oral agreement after they had required the express "waiver" of notice of arrival to be written. The most that a carrier can demand is that the "waiver" of notice of "placement" shall keep step with the "waiver" of notice of arrival; necessarily conceding that after it became necessary for the second to be in writing, it became also necessary for the first to be so.

Judgment affirmed.

[15] 95 I.C.C.Rep. 603.

[16] 266 U.S. 92, 45 S.Ct. 24, 69 L.Ed. 182.

[17] Central West Coal & Lumber Co. v. Chicago, Burlington & Quincy Railroad, 104 I.C.C.Rep. 452; Western Bridge & Construction Co. v. St. Louis-San Francisco Co., 118 I.C.C.Rep. 607; Consolidated Lumber Co. v. Lehigh Valley Railroad, 139 I.C.C.Rep. 278; Natural Products Refining Co. v. Central Railroad of New Jersey, 216 I.C.C.Rep. 105.