Reversed and remanded for further proceedings not inconsistent with this opinion.

UNITED VIDEO BUYERS ASSOCIATION, PLAINTIFF-RESPONDENT, v. NORTH PENN TRANSFER, INC., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 26, 1986—Decided June 27, 1986.

Before Judges KING, O'BRIEN and SCALERA.

*Andre Shramenko* argued the cause for appellant.

*Walter J. McNicholas* argued the cause for respondent.

The opinion of the court was delivered by

KING, P.J.A.D.

This case involves the right of a consignor of cargo to recover against the carrier where the consignor's bill of lading was not filled out strictly in accordance with the applicable federal tariff regulations. The case is here on our grant of leave to appeal from the denial of a summary judgment motion by the carrier, North Penn Transfer, Inc. (North Penn). *R.* 2:2–4. We disagree with the ruling of the Law Division judge and reverse the order denying summary judgment.

The facts are essentially uncontroverted. Plaintiff, United Video Buyers Association (United Video), contracted with the carrier, North Penn, to ship video recorders worth about $34,-000 from Fairfield, New Jersey to North Providence, Rhode Island on eight occasions between December 22, 1981 and January 18, 1982. Although United Video intended that the shipment be on a C.O.D. basis and North Penn, in fact, treated the shipment as C.O.D., United Video did not make the proper C.O.D.[1] notations on its bills of lading. In treating this as a C.O.D. shipment North Penn accepted certified checks which did not bear the signature of a bank officer and which were uncollectible. United Video brought this suit against the ship-

---

[1] The Law Division opinion accurately defines the parties' relationship.

A C.O.D. term in a bill of lading or other contract means collect on delivery. The carrier under a C.O.D. shipment performs two roles: he is a bailee for the transport of goods and he is an agent for the collection of the price of goods. The former duty is imposed by law, the latter by private contract. Annotation, "Liability of Carrier for Delivering Goods Sent C.O.D. Without Receiving Cash Payment," 27 *A.L.R.*3d 1320, 1324 (1967). [204 *N.J.Super.* 127, 130].

per for the amount of the certified checks, claiming that its employees negligently accepted "bogus and worthless checks."

In its motion for summary judgment, North Penn argues that as a matter of law it was not liable for negligently performing the C.O.D. shipment because United Video's bill of lading did not conform to tariff Regulation No. 190 governing C.O.D. shipments. North Penn relies on case law which holds that a shipper's nonconformance with the requirements of published tariff regulations cannot be waived by the carrier. North Penn contends that even though a carrier is aware of the shipper's improperly placed C.O.D. notations and still treats the shipment as a C.O.D. delivery, but does so negligently, the carrier is not liable. North Penn contends that if the shipper's C.O.D. designation did not comply with the tariff regulations, a C.O.D. contract was not created. At the hearing on North Penn's motion for summary judgment its attorney did not deny that North Penn actually treated this shipment on a C.O.D. basis.

United Video admits that the shipment in this case was technically not a C.O.D. shipment under the regulations. They admit that on filling out the bill of lading, which was a preprinted form supplied by North Penn, its agent put the C.O.D. instructions in the description section of the form, which was apparently customary practice for United Video. Rule No. 190 of the tariff regulations, which governs C.O.D. shipments, states that "the letters C.O.D. must be printed, stamped, typed or written on Bills of Lading and Shipping Orders *immediately before name of consignee.*"[2] (Emphasis added).

By the same token, as noted, North Penn does not deny that it treated this shipment on a C.O.D. basis anyway. In its

---

[2]As properly observed by the Law Division judge:

The shipments are thus governed by the Interstate Commerce Act, 49 *U.S.C.A.* § 1 *et seq.,* more specifically the Pomerene Bills of Lading Act, 49 *U.S.C.A.* § 81 to § 124. The latter provisions govern "bills of lading issued by any common carrier for the transportation of goods ... from a place in

receipts for each United Video shipment, North Penn itself acknowledged a specific C.O.D. amount, cash or certified check. North Penn contends, however, that, as a matter of law, it cannot be held liable for negligent C.O.D. services without a C.O.D. contract, *i.e.*, a bill of lading with the proper notations, and since United Video's bill of lading for these shipments did not have correct C.O.D. notations, there was no such contract created. North Penn also contends that the tariff rules governing C.O.D. shipments are not waiveable.

The established precedent appears to be on North Penn's side. In *North Coast Mfg. Corp. v. Union Pacific Railroad Co.*, 185 *F.Supp.* 287 (D.Ore.1960), the facts were almost identical. There a consignor-shipper contracted with defendant carrier for shipment of goods. The consignor-shipper filled out bills of lading intending a C.O.D. shipment, but put the C.O.D. notation in a place other than that authorized by the carrier's tariff. On previous occasions when this was done, the carrier's billing clerks noticed the C.O.D. notations and treated the shipment accordingly. In the shipment at issue the billing clerks did not notice the C.O.D. notations, although the shipper claimed that the carrier's truck drivers were notified, and consequently C.O.D. charges were not collected.

The consignor brought suit for damages and the judge granted the carrier's motion for summary judgment. Plaintiff argued that the railroad, in accepting a C.O.D. bill, functioned as a "collection agent," and therefore the C.O.D. bill of lading was a private contract. As a private contract, terms such as the exact location of C.O.D. notation were waiveable. In rejecting this argument the District Court judge stated

> The authorities fail to support this contention. *Davis v. Henderson*, 1924, 266 *U.S.* 92, 45 *S.Ct.* 24, 69 *L.Ed.* 182; *Empire Box Corporation of Strouds-burg v. Delaware L. & W.R. Co.*, 2 *Cir.*, 1948, 171 *F.*2d 389, 6 *A.L.R.*2d 874. As Judge Learned Hand observed in the *Empire Box* case, the tariff serves to reduce the complex operations of a railroad to set rules and regulations in order

one state to a place in another state." 49 *U.S.C.A.* § 81. [204 *N.J.Super.* at 129].

to facilitate "speedy and certain application in practice." 171 *F*.2d at page 391. This observation is applicable equally to both the "common carrier" and the "collection agent" functions of the railroad. [*Id.* at 288].

In *Davis v. Henderson*, 266 *U.S.* 92, 45 *S.Ct.* 24, 69 *L.Ed.* 182 (1924) (Brandeis, J), the Supreme Court handed down the general rule applicable in this case: *i.e.*, an interstate carrier cannot waive a rule which is part of its published tariff with respect to interstate shipments. In *Davis* a cattle shipper brought suit against an interstate carrier for failing to provide a cattle car within a reasonable time after notice. Although the shipper gave oral notice, it did not give written notice as required by the carrier's published tariffs. The federal Supreme Court held that published tariff rules cannot be waived. 266 U.S. at 92, 45 S.Ct. at 24, 69 *L.Ed.* at 182. *See Keogh v. Chicago & N.W. R. Co.*, 260 *U.S.* 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922) (Brandeis, J., "The rights, as defined by the tariff, cannot be varied or enlarged by either contract or tort by the carrier."); *see also The Upjohn Company v. Timpany*, 168 *N.J.Super.* 283, 288 (App.Div.1983); *Johnson & Dealaman, Inc. v. Wm. F. Hegarty, Inc.*, 93 *N.J.Super.* 14 (App.Div.1966) (in both cases shippers were prevented from recovering for damages to interstate shipments based on their failure to timely file notices of claim under applicable provisions of their bills of lading).

Likewise, in *Rothschild v. American Ry. Express Co.*, 226 *A.D.* 187, 234 *N.Y.S.* 454 (App.Div.1929), where plaintiff shipper sent two boxes for shipment C.O.D., but marked only one box as such, with the result that C.O.D. charges were not collected on the unmarked box, the court reversed the trial court's decision against the carrier and dismissed the shipper's suit. Even though the carrier knew of plaintiff's desire to ship both boxes C.O.D., as evinced by the carrier's receipt which showed both boxes as C.O.D., plaintiff failed to comply with applicable tariff regulations which require shippers to properly segregate and mark each individual package for shipment. The court held that the carrier's receipt was not and could not constitute a consent or agreement on the carrier's part to perform a special service which other shippers might not receive.

The public policy underlying these decisions was explained by Judge Learned Hand in *Empire Box Corp. v. Delaware L. & W.R. Co.,* 171 *F.*2d 389 (2nd Cir.1948). In this case defendant railroad carrier temporarily placed on its tracks certain carloads of shipments for plaintiff consignee whose sidetrack was fully occupied. Defendant gave oral notice of the situation and imposed demurrage charges which the consignee paid but sought to recover in this suit. The applicable tariff regulations specifically stated that in situations such as this where delivery cannot be made, it is the duty of the railroad to hold the cars and send written notice to the consignee. This would constitute constructive placement. Defendant offered the familiar argument that plaintiff orally waived the requirement of written notice and therefore the demurrage charges were proper.

Although the court was inclined to agree, it ruled against defendant on the basis of *Davis v. Henderson, supra,* which established the "canon of rigid adherence to the letter, which the Supreme Court has adopted in general towards published tariffs and their attendant rules." 171 *F.*2d at 391. Judge Hand stated further that

[t]he regulations which govern the transactions of a great railroad ... demand speedy and certain application in practice, if the work is to go on as it should. Their incidence will often be harsh and unjust, and yet that may not be too high a price for smooth operation.... Therefore although in the case at bar injustice to the carrier conspires with opportunity to defeat the purpose of the canon, we hesitate to deviate from it. [171 *F.*2d at 391].

Returning to the present case, the Law Division judge was apparently aware of these cases and understood North Penn's arguments in its motion for summary judgment, but understandably did not like the end result. For example, the judge stated in response to North Penn's counsel's remark that its position has always succeeded, "I will tell you quite candidly, I can't imagine why."

We respectfully part with the conclusion of the Law Division judge who stated at the end of the opinion

I am satisfied that the policy reasons that underlie the *North Coast* line of cases (see Judge Learned Hand's exposition in *Empire Box Corporation v. Delaware L & W.R. Co.,* 171 *F.*2d 389 (2 Cir.1948)) do not apply in this case.

That policy evolved to deal with the responsibilities and obligations of billing clerks faced with a constant stream of bills of lading and other documents. It is not too much to say that a carrier may insist that all such documents be prepared in conformance with the requisite regulations before it may be held liable for deviating from the shipper's instructions.

But in this case, liability is not posited on a shipping clerk's failure to notice C.O.D. instructions; indeed, the improperly placed C.O.D. instructions were noted and a C.O.D. fee charged to the shipper. Liability rests, not on the carrier's failure to treat these as C.O.D. shipments at all but, having undertaken to treat these as C.O.D. items, doing so in a negligent manner when it accepted certified checks not signed by a bank officer. [204 *N.J.Super.* at 131].

While her distinction between failing to notice improperly placed C.O.D. notations and noticing improperly placed C.O.D. notations, but acting negligently, appears to be valid, it departs from the *Davis v. Henderson* holding that a carrier cannot waive a rule which is part of its published tariffs with respect to interstate shipments and is also contrary to *Rothschild* where the carrier was held not liable for failing to collect C.O.D. charges on an unmarked box even though the carrier itself treated the shipment on a C.O.D. basis anyway.

In conclusion, while the cases may seem to dictate an unpleasant result, the law is clear. As Judge Hand observed, the price of uniformity throughout an intricate national transportation system may be an occasional harsh result.

Reversed.