UNITED VIDEO BUYERS ASSOCIATION, PLAINTIFF-APPELLANT, v. NORTH PENN TRANSFER, INC., DEFENDANT-RESPONDENT.

Argued February 18, 1987—Decided June 29, 1987.

*Jack Jay Wind* argued the cause for appellant (*Margulies, Margulies, & Wind,* attorneys).

*Andre Schramenko* argued the cause for respondent.

PER CURIAM.

The judgment is affirmed, substantially for the reasons expressed in the opinion of the Appellate Division, reported at 211 *N.J.Super.* 584.

*For Affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, GARIBALDI, and STEIN—5.

*For reversal and remandment*—Justices HANDLER and O'HERN—2

HANDLER, J., dissenting.

Plaintiff, United Video Buyers Association ("UVB"), had an agreement with North Penn Transfer, Inc. ("NPT") to ship video recorders on a "Collect on Delivery" ("C.O.D.") basis. The eight bills of lading prepared by plaintiff failed to comply, however, with federal Rule of Freight Classification 190, which requires that the letters "C.O.D." be affixed before the name of the consignee and remittance instructions be properly filled out, in default of which the consignor (in this case NPT) has no duty to accept the shipments on a C.O.D. basis. In this case, the bills of lading clearly noted that the shipment was to be C.O.D., but did so only in the package description section and in a checked box noting that the C.O.D. charge was to be paid by the consignee; there was no C.O.D. notation immediately before the consignee's name, and the C.O.D. remittance instructions were left blank on all but one of the bills of lading. Defendant, NPT, treated the deliveries as C.O.D. shipments nonetheless, but the certified checks it received from the buyer proved uncollectible because they were unsigned by a bank officer. Plaintiff brought suit in tort for the value of the uncollectible checks; defendant moved for summary judgment,

claiming that the parties' noncompliance with Rule of Freight Classification 190 relieves it of all liability.

The trial court denied the defendant's motion, holding that the failure to comply with Rule 190 does not foreclose an action in tort for negligence in collection on delivery. 204 *N.J.Super.* 127, 131 (1985). The Appellate Division, in an opinion reported at 211 *N.J.Super.* 584 (1986), and adopted today by a majority of this Court, reversed, citing authority holding that the rules governing federal tariffs are to be interpreted strictly. I disagree with the majority's adoption of this opinion, and would reverse and remand for trial.

A carrier that accepts shipments on a C.O.D. basis acts both as a common carrier and bailee and as a collecting agent of the shipper. Its duties as a carrier/bailee to receive, transfer, care for, and deliver the goods are derived from common law; its duty to act as a collection agent, however, derives from the contract between the shipper and the carrier, and has no common-law foundation. *Littleton Stamp & Coin Co., Inc. v. Delta Airlines, Inc.,* 778 *F.*2d 53, 55 (1st Cir.1985); *Cermetek, Inc. v. Butler Avpak, Inc.,* 573 *F.*2d 1370, 1375 (9th Cir.1978); Annotation, *Liability of Carrier for Delivery Goods Sent C.O.D. Without Receiving Cash Payment,* 27 *A.L.R.*3d 1320, 1324 (1969).

There is authority in the federal courts, moreover, for the proposition that a C.O.D. contract is invalid if it fails to comply strictly with applicable tariff regulations under the Interstate Commerce Act ("ICA"). In *Davis v. Henderson,* 266 *U.S.* 92, 45 *S.Ct.* 24, 69 *L.Ed.* 182 (1924), the Supreme Court held that an interstate carrier cannot waive compliance with tariff rules under the ICA, for "[t]he transportation service to be performed was that of common carrier under published tariffs. The rule was a part of the tariff." *See also Keogh v. Chicago & N.W.R. Co.,* 260 *U.S.* 156, 43 *S.Ct.* 47, 67 *L.Ed.* 183 (1922) (Brandeis, J.) ("The rights, as defined by the tariff, cannot be

varied or enlarged by either contract or tort of the carrier"); *cf. Rothschild v. American Ry. Express Co.*, 226 *A.D.* 187, 234 *N.Y.S.* 454 (App.Div.1929) (where plaintiff shipper sent two boxes C.O.D. but violated applicable tariff regulations by marking only one box C.O.D., shipper could not recover for carrier's failure to collect for the unmarked box). Judge Learned Hand explained the policy underlying these decisions in *Empire Box Corp. v. Delaware L. & W.R. Co.*, 171 *F.*2d 389 (2d Cir.1948). Rejecting the argument that where delivery cannot be made, a carrier may give oral notice and thus waive the requirements of the tariff regulations, Judge Hand wrote:

> Had the transactions been between the plaintiff and a party other than a common carrier, and had they not been subject to regulation under the Interstate Commerce Act the plaintiff [shipper, which was seeking to recover demurrage charges on the ground that the carrier's notice was not in writing] would have no standing. It had received the full benefit of the services for which it paid, and neither law nor equity would countenance a recovery that would result in the unjust enrichment which it is the chief purpose of the action for money had and received to prevent. Since, however, the charges were made and collected by a carrier under a published tariff, we cannot decide the case merely under the common law; and we think it is ruled by Davis v. Henderson....
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> The regulations which govern the transactions of a great railroad—infinite in number and diversity as they are—demand speedy and certain application in practice.... Their incidence will often be harsh and unjust, and yet that may not be too high a price for smooth operation. The cost and delay in working out justice in the relatively few instances where their literal enforcement works injustice, may in the end involve more loss than gain. The law has often accepted similar compromises in recognition of its inability to decide every case on its merits; the Statute of Frauds and the Statute of Limitations at once come to one's mind. Therefore, although in the case at bar injustice to the carrier conspires with opportunity to defeat the purpose of the canon, we hesitate to deviate from it. [*Id.* at 391.]

Judge Hand's policy rationale supported the result in *North Coast Mfg. Corp. v. Union Pacific Railroad Co.*, 185 *F.Supp.* 287 (D.Ore.1960), the case principally relied on by NPT and the Appellate Division. In *North Coast,* a consignor-shipper contracted with a carrier for shipment of goods C.O.D. The shipper filled out bills of lading, but placed the C.O.D. notation in a place other than that authorized by the carrier's tariff.

The carrier's billing clerks, who on previous occasions had noticed the C.O.D. notations and treated the shipments accordingly, failed to notice the notation in the shipment at issue (although the shipper claimed that the truck drivers were notified). As a result, the C.O.D. charges were not collected. The District Court rejected the argument that the carrier owed a duty to the shipper as its collection agent to collect upon delivery, because the contract at issue was not a private contract: "As Judge Learned Hand observed in the *Empire Box* case, the tariff serves to reduce the complex operations of a railroad to set rules and regulations in order to facilitate 'speedy and certain application in practice.' ... This observation is applicable equally to both the 'common carrier' and the 'collection agent' functions of the railroad." *Id.* at 288.

To summarize, the carrier's duty as a collecting agent derives not from common law but from the contract between the shipper and the carrier. The enforceability of such contracts in interstate commerce, moreover, has been held subject to strict compliance with applicable tariffs and appurtenant rules and regulations. Given plaintiff's concession that the bills of lading in this case did not conform to the requirements of Rule 190, it follows that the parties' agreement in this case, as in *North Coast,* created no contractual duty to collect upon delivery.

If, therefore, the carrier in this case had not noticed the C.O.D. notation and had not attempted to collect on delivery, this case would fall squarely within the rule of *North Coast.* As the trial court pointed out, however,

> in this case, liability is not posited on a shipping clerk's failure to notice C.O.D. instructions; indeed, the improperly placed C.O.D. instructions were noted and a C.O.D. fee charged to the shipper. Liability rests, not on the carrier's failure to treat these as C.O.D. shipments at all but, having undertaken to treat these as C.O.D. items, doing so in a negligent manner when it accepted certified checks not signed by a bank officer. A carrier which accepts C.O.D. shipments for delivery "should reasonably be required to educate its agents and employees as to the identifying characteristics of a certified check." *The Video Station v. Frey's Motor Express,* 188 *N.J.Super.* 494, 499 (App.Div.1983). [204 *N.J.Super.* at 131.]

As Judge Hand explained, the purpose of the requirement that tariffs and appurtenant rules and regulations be read strictly is to facilitate interstate commerce by, in this case, requiring shipping clerks to look in only one place for the C.O.D. notation. This purpose is both sound and salutary. It is difficult, however, to see how such a purpose is served—or even implicated—by foreclosing an action in negligence where the carrier admits not only that its clerks noticed the C.O.D. notation, but that it treated the transaction as C.O.D. by filling out C.O.D. delivery receipts and actually attempting collection on delivery.

There is evidence, moreover, that federal courts will not employ the canon of strict construction in cases arising under the ICA where imperfect compliance has not frustrated the policy underlying a formal requirement. *See Culver v. Boat Transit, Inc.*, 782 *F.*2d 1467, 1469 (9th Cir.1986) (requirement under ICA that claim of damage to freight be formalized may be relaxed where there is a written notice of damage, "coupled with a clearly communicated intent to hold the carrier liable, plus the carrier's investigation"); *see also Taisho Marine & Fire Insurance Co. v. The Vessel "Gladiolus"*, 762 *F.*2d 1364, 1368 (9th Cir.1985) ("the formal requirement that the written communication inform the carrier that it is being held responsible for the damage may be relaxed when the carrier is given written notice of the fact of damage, has conducted a full inquiry, and is aware ... that reimbursement will be sought").

I believe, in sum, that the *North Coast* line of cases is distinguishable from the instant case and should not foreclose a suit in tort for the carrier's negligence in collecting on delivery in the narrow circumstances of this case, where (1) the C.O.D. nature of the transaction was noted plainly on the bill of lading, (2) the C.O.D. designation was noticed by the carrier, and (3) the carrier treated the transaction in all respects as C.O.D. Accordingly, I would reverse the judgment of the Appellate Division and remand for further proceedings in the Law Division.

Justice O'HERN joins this opinion.